347 F.Supp. 1081 (1972)
Mitchell HAYES et al.,
v.
Charles J. MORSE et al.
No. 70 C 606(3).
United States District Court, E. D. Missouri, E. D.
July 14, 1972.
*1082 O'Herin & Newberry, Malden, Mo., Burton H. Shostack, Kramer, Chused & Kramer, St. Louis, Mo., for plaintiffs.
Robert E. Joyner, Wrape & Hernly, Memphis, Tenn., and Brainerd W. LaTourette, Jr., Schoenbeck & LaTourette, St. Louis, Mo., for defendant Midwest Haulers, Inc.
Merle L. Silverstein, Rosenblum & Goldenhersh, Clayton, Mo., and David Previant and Alan M. Levy, Goldberg, Previant & Uelmen, Milwaukee, Wis., for defendants Williams, Lueking, Jr., and all the Trustees of the Cent. States, S. E. and S. W. Areas Pension Fund.

MEMORANDUM OPINION
WEBSTER, District Judge.
This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57, Federal Rules of Civil Procedure. The case was submitted to the court upon a stipulation of facts.
The court adopts the stipulation of facts and incorporates them herein by reference.
Plaintiffs claim entitlement to pension fund benefits arising out of their claimed employment by Midwest Haulers, Inc. In a supplemental complaint, plaintiffs seek damages from Midwest for breach of contract and misrepresentation arising out of the failure of *1083 Midwest to have provided such pension benefits which plaintiffs claim Midwest had agreed to provide.
The central issue in this suit is whether plaintiffs were "employees" of Midwest within the meaning of the documents establishing the Central States, Southwest Areas Pension Fund. A second issue is whether payments made to the Pension Fund on behalf of plaintiffs were "self payments" prohibited by the Trust Agreement creating the Pension Fund. Plaintiffs seek, in addition to monetary relief, a declaration and adjudication of their rights under the Trust Agreement.
The record shows that plaintiffs Hayes, Shoemaker and Martin have satisfied all eligibility requirements, provided they were employees of Midwest during the period used to calculate their respective years of service as driver-owners under contract with Midwest.
The record discloses that Midwest arranged for the purchase and financing of plaintiffs' tractors, retaining title thereto while they were being paid off. The equipment payments were made by the deduction of a given amount per mile withheld from Midwest's payment to each plaintiff for his services and the use of his equipment. The equipment carried Midwest's name and I.C.C. identification number, both in accordance with I.C.C. regulations and state law. All owner/operators leased their tractors back to Midwest through a signed lease agreement which provided that the tractor could be operated only for Midwest, and that the owner/operator would be paid a rental value for the use of the tractor. The lease further provided that the owner/operator was not the "agent, employee, or representative of [Midwest] for any purpose whatever" but an independent contractor only.[1]
The term "employee" is defined in Article I, Section 7 of the Pension Plan. As pertinent, Section 7 provides:
"Employee, as used herein, shall include:
(a) a personother than a person employed in a supervisory capacity who, is employed under the terms and conditions of a collective bargaining agreement entered into between an employer and a union and on whose behalf payments are made to the Trust Fund by the employer;
* * *
(d) In all instances, the common law test, or the applicable statutory definition of master-servant relationship shall control."[2]
To qualify as an "employee", each plaintiff must satisfy the requirements of Section 7(a) and Section 7(d), supra. The same definitions appear in Article I, Section 3 of the Trust Agreement. The parties have stipulated that sufficient payments have been made to the fund on behalf of Hayes, Shoemaker and Martin, and defendants do not contend that plaintiffs were employed in a "supervisory capacity".
Section 10 of the Pension Plan provides:
"A Collective Bargaining Agreement, as used herein, shall mean an agreement to which any union as defined herein is a party."
The record contains a specimen labor agreement with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. It is stipulated that Midwest is a signatory thereto. Article 40, Section 2 of the labor agreement in pertinent part provides:
"(a) Employees covered by this Agreement shall be construed to mean *1084 any driver, chauffeur, or driver-helper operating a truck, tractor, motorcycle, passenger or horse-drawn vehicle operated for transportation purposes"
Article 22, Section 1 of the Labor Agreement in pertinent part provides:
"Owner-operatorsshall not be covered by this Agreement unless affiliated by lease with a certificated or permitted carrier which is required to operate in compliance with all the provisions of this Agreement and holding proper ICC and state certificates and permits. Such owner/operators shall operate exclusively in such service and for no other interests."
All of the plaintiffs signed lease agreements with Midwest Haulers. Owner/operators were allowed to drive their equipment only for Midwest and were not permitted to solicit runs for other customers. As a consequence, plaintiffs were not excluded under Article 22, Section 1 and were "employees" under Article 40, Section 2 of the Labor Agreement. The Labor Agreement satisfies the requirements of a collective bargaining agreement set forth in Section 7(a) and defined in Section 10 of the Pension Plan.
We next consider whether plaintiffs qualify as "employees" under the common law test incorporated in Section 7 (d) of the Pension Plan or were in fact independent contractors. "The important distinction is between service in which the actor's physical activities and his time are surrendered to the control of the master, and service under an agreement to accomplish results or to use skill and care in accomplishing results." Restatement, Agency § 220 (1933), cited with approval in NLRB v. Nu-Car Carriers Inc., 189 F.2d 756 (3rd Cir. 1951) which also quoted Judge Learned Hand's statement that the "test lies in the degree to which the principal may intervene to control the details of the agent's performance." Radio City Music Hall Corp. v. United States, 135 F.2d 715, 717 (2d Cir. 1943).
The facts in Nu-Car, supra, were very similar to the facts in the instant case. The trucker operated under an owner/operator plan which included a sales agreement whereby the tractor was sold to the owner/operator for a down payment, the balance to be paid at a stated mileage rate out of earnings; a lease agreement provided that the owner/operator would lease back the tractor to the trucker; and the trucker reserved the right to terminate the contract for violation of rules by the drivers. The drivers were paid by the mile. In defining the term "employee" for purposes of the NLRB Act, the court applied common law tests and held that the degree of control which the company could exert over the owner/operators under the "sale" and "lease" agreements was so great as to make the drivers clearly employees. The court said:
"If the driver `owns' the truck, his ownership is qualified in ways not usual for owners. He gets no right to possession of the tractor. The most he gets is the right to drive it on company business when instructed to do so." 189 F.2d at 759.
Applying the "right to control" test to the facts here, it is significant and material that:
1). The owner/operator was required to follow routes assigned by Midwest, and to sign in at checkpoints along the routes so that Midwest was informed as to his whereabouts;
2). Owner/operators were subject to call for work by Midwest during the time they were not driving, except for ICC required off-duty hours and on vacations;
3). Owner/operators could refuse a trailer only if it was overweight, unsafe, or otherwise violated ICC requirements;

*1085 4). The owner/operator was instructed by Midwest as to all points and times of pick-up and delivery;
5). If an owner/operator was delayed, he was required to call Midwest and explain the reason for the delay. Excessive or unwarranted delays could be the basis of termination.
Taking these factors together, the court finds that the physical activities of the actor [each plaintiff] are surrendered in a large degree to the control of the master [Midwest], and that the principal [Midwest] may quite extensively intervene to control the details of the agent's [each plaintiff's] performance. The court finds and concludes the plaintiffs were employees under the general common law test spelled out in Nu-Car.
The Trust Agreement creating the Pension Fund states in Article XIV, Section 7 that "This Agreement shall in all respects be construed according to and be governed by the laws of the State of Illinois." The Illinois cases dealing with this question hold that there is no single fact which controls the existence or non-existence of an employer-employee relationship, but that some of the more important factors to be considered are whether the principal has the right to control the manner and details of the agent's work, whether he has the right to discharge the agent, and whether the relationship is to terminate at the conclusion of a particular job. See Henn v. Industrial Comm'n, 3 Ill.2d 325, 121 N.E.2d 492 (1954); Village of Creve Coeur v. Industrial Comm'n, 32 Ill.2d 430, 206 N.E.2d 706 (1965); Standard Accident Insurance Co. v. Industrial Comm'n, 39 Ill.2d 172, 233 N.E.2d 543 (1968). Considering the amount of control that Midwest had over plaintiffs' conduct in performance of plaintiffs' services, it is clear that Midwest had the right to control the "manner and details of the work". Midwest had the right to discharge the plaintiffs for cause; furthermore, the relationship was not to terminate at the conclusion of a particular job, but rather plaintiffs were bound by a lease agreement for a period of one year, renewable each year, during which time plaintiffs were forbidden to drive their tractors for anyone but Midwest. The application of Illinois law only strengthens the conclusion that plaintiffs were "employees" of Midwest.

II
Defendants of the Pension Trust Agreement contend that payments to the Pension Fund on behalf of plaintiffs were actually "self-payments" prohibited by Article I, Section 7 of the Pension Plan, quoted above, which defines "employee" in part as being one for whom payments are made to the Trust Fund "by the employer". (Emphasis added). The parties have stipulated that Midwest deducted from plaintiffs' agreed compensation the amount contributed to the Pension Fund on their behalf. However, it does not necessarily follow that payments have not been made by Midwest on plaintiffs' behalf. Mr. Loren Hendrix, President of Midwest testified in an affidavit (Exhibit 17, attached to the Supplemental stipulations) that plaintiffs received in excess of what the collective bargaining agreement called for, even after the Pension Fund payments had been deducted. Thus, it appears that Midwest was giving plaintiffs fringe benefits or "bonuses" by paying them in excess of what was required, and that part of these fringe benefits were contributions to the Pension Fund. It thus cannot be said that these contributions were not made by Midwest simply because for purposes of its own Midwest showed in its records that part of plaintiffs' fringe benefits was in the form of extra cash and part was paid into the Pension Fund.

III
Defendants further argue that United States v. Mutual Trucking Co., 141 F.2d 655 (6th Cir. 1944), in which Midwest was a party, precludes recovery by plaintiffs. The facts in that case *1086 were similar in many respects to the facts in the instant case. The court there held that the owner/operators were not employees within the meaning of the Social Security Act. However, in Mutual Trucking, the owner/operators hired and fired their own drivers, a circumstance which was deemed most important by the court in determining that the employer-employee relationship did not exist between the trucking company and the owner/operators. Here, the owner/operators are expressly forbidden to have a substitute drive their trucks unless such substitute has been approved by Midwest. Furthermore, it does not follow simply because owner/operators are not considered employees for purposes of Social Security that they are not employees within the meaning of the term as used in the Pension Fund, the Trust Agreement and the common law. The contrary has already been demonstrated.

IV
The parties have stipulated "that sufficient payments have been made to the fund so that if the court finds the plaintiffs were employees while driving as owners/operators for Midwest Haulers and that they otherwise satisfy the Pension Fund's eligibility requirements in regard to years of service, breaks in service, etc., they would qualify for pension benefits." Defendants contend, however, that the determination by the Trustees that plaintiffs were not employees within the meaning of the Plan was in the exercise of the discretion reposed in them as Trustees, and is therefore not subject to review.
The test as set forth in Danti v. Lewis, 114 U.S.App.D.C. 105, 312 F.2d 345 (1962), and followed in Kosty v. Lewis, 115 U.S.App.D.C. 343, 319 F.2d 744 (1963) is "whether the Trustees have acted arbitrarily, capriciously or in bad faith; that is, is the decision of the Trustees supported by substantial evidence or have they made an erroneous decision on a question of law."
Defendant Trustees contend that in relying upon United States v. Mutual Trucking Co., 141 F.2d 655 (6th Cir. 1944) and a later opinion by the Internal Revenue Service dated January 28, 1971 (Exhibit 11) they acted reasonably in the exercise of their duties in denying the eligibility of plaintiffs Shoemaker, Martin and Hayes. But, in this court's opinion, their reliance upon Mutual Trucking was misplaced. As previously noted, a power to hire, fire and assign their own drivers was reserved to the owners/operators, a power deemed crucial by the court in the Mutual Trucking case, and completely absent in the case of these plaintiffs. 141 F.2d 655 at 658, 659. Nor is the I.R.S. opinion (Exhibit 11) a proper basis for reliance by the Trustees. That opinion, issued January 28, 1971, relates exclusively to the status of the owner/operators for purposes of collection and payment of F.I.C.A. taxes, and would not be determinative or of precedential value to the Trustees in determining whether plaintiffs Shoemaker, Martin and Hayes were employees within the meaning of the Pension Plan and Trust Agreement. See United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947) and Bartels v. Birmingham, 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947) on the special factors that have entered into judicial determinations as to the coverage of the Social Security Act. Compare Rev.Rul. 70-602 I.R.B. 1970-48, 14 holding on facts substantially similar to the instant case that owner/operators were employees of the company for purposes of the Federal Insurance Contributions Act, the Federal Unemployment Tax Act and the Collection of Income Tax at Source on Wages. In the I.R.S. opinion dated January 28, 1971 (Exhibit 11), the author attempts to distinguish Rev.Rul. 70-602 from the Midwest situation simply because the lease agreement contains a self-serving declaration of independent contractors status. In our opinion, this is not a proper basis of distinction as we have observed elsewhere in this memorandum opinion. We need not, however, deal with the validity of the I.R.S. opinion. It is not before the court. It is sufficient to say that it is of no precedential *1087 value to this court, or to the defendant Trustees.
No finding of bad faith is required in order to review the Trustees' determination. The court does find that the determination was arbitrary, unsupported by substantial evidence and erroneous on a question of law. Danti v. Lewis, supra.

V
The court has jurisdiction over the parties and the subject matter, 29 U.S.C. § 185(a). The court further finds and concludes that a justiciable controversy exists and that this is an appropriate matter for relief by way of declaratory judgment. 28 U.S.C. § 2201; Fed.R.Civ.P. 57.[3]
Defendants Charles J. Morse, Ray L. Williams and Herman A. Lueking, Jr. are three of fifteen Trustees of the Central States Southeast and Southwest Areas Pension Fund of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America and are sued in their respective capacities as such Trustees and as representatives of a class to which they belong.[4] The class consists of all of the Trustees of the Trust or Pension Fund, and the beneficiaries of the Trust and Pension Fund represented by such Trustees, The court finds that the defendants do fairly represent such class for purposes of a binding adjudication of the rights of plaintiffs with respect to such Pension Plan and Pension Fund.
In dealing with plaintiffs Cecil Emery and Norman Ellison, however, it must be noted that they seek an adjudication that they were employees of Midwest Haulers in order to perfect their claim to pension benefits as members of Teamsters Local 710, which has a collective bargaining agreement with Midwest Haulers, Inc. Emery and Ellison have no claim of interest in the Central States Southeast and Southwest Areas Pension Fund. The conclusions of this court are based upon an interpretation of "employee" as defined in the Central States Pension Plan and Trust Agreement, which further incorporate common law definitions. The court has nothing before it with respect to any other pension plan.
Accordingly, the court must and does decline to adjudicate the rights of plaintiffs Cecil Emery and Norman Ellison and a judgment for defendants will be entered as to such plaintiffs.
The court further finds and concludes that plaintiffs Shoemaker, Martin and Hayes were at all times material to this lawsuit employees of Midwest Haulers, Inc. while driving as owners/operators, and, having satisfied the Pension Fund eligibility requirements in regard to years of service, are qualified for and are entitled to pension benefits as provided in the Pension Plan.
Having so concluded, it follows that defendant Midwest Haulers, Inc. is not in breach of its contract, and judgment will be entered for defendant and against plaintiffs on the issues joined in the supplemental complaint.
Defendants will be directed to account to plaintiffs Shoemaker, Martin and Hayes for all past due pension benefits; will be directed to pay such benefits forthwith and to pay in the future such benefits as may be due to them from time to time under the Plan.
The foregoing memorandum opinion constitutes the findings of fact and conclusions of law of the court. A judgment and decree will be entered accordingly.
NOTES
[1] This language was dropped from Midwest's standard lease some time before 1969, but the record does not show conclusively when. In any event, such a clause is not controlling when it appears that an employer-employee relationship does in fact exist. Steel City Transport Inc. v. NLRB, 389 F.2d 735 (3rd Cir. 1968).
[2] These definitions are also contained in Article I, Section 3 of the Trust Agreement.
[3] No issue of exhaustion of Administrative procedures required by Article V of the Pension Plan has been presented to the court, and non compliance therewith, if any, is deemed waived.
[4] Defendants claim that Charles J. Morse is not now a Trustee. The present Pension Fund does not give his name as a Trustee, but the Trust Agreement creating the Fund lists his name as a signator to the original Trust Agreement.