LESLIE M. MUNTS, Plaintiff-Appellee, *v.* FRANK E. FITZSIMMONS *et al.,* Defendants-Appellants.

(No. 74-9; ▮)

Third District—January 31, 1975.

*Rehearing denied March 1, 1975.*

Sidney D. Davidson, of Peoria (Alan M. Levy, of counsel), for appellant.

Alan B. Marsh, of Ottawa, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from a judgment entered by the Circuit Court of La Salle County in favor of Leslie M. Munts, plaintiff, who brought an action at law for a judgment declaring that he is entitled to certain pension benefits from the Central States, Southeast and Southwest Areas Pension Fund, of which the defendants are trustees.

The fund from which the plaintiff seeks to obtain a pension is jointly administered by an equal number of employer and union trustees in accordance with the Taft-Hartley Act (29 U.S.C. 186(c) (1970)), with a consequent tax exemption under provisions of the Internal Revenue Code which incorporates the Taft-Hartley Act by reference. Because the statutory scheme restricts such trust funds to disbursements "* * * for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees * * *" (see 29 U.S.C. 186(c) (1970)), the trustees declined to pay benefits to the plaintiff since they determined that his work fell into the category of being that of an independent contractor rather than that of an employee.

In our opinion, the crucial issue presented in this appeal is a narrow one, to-wit, whether the defendant trustees acted arbitrarily or capriciously in denying the plaintiff's application for a pension.

The evidence adduced during the trial of this cause disclosed that the plaintiff owned his own truck, paid for its operation and upkeep, and that he was paid on the basis of tonnage and distance hauled for delivery work which he performed for a business known as the French Coal Company. While most of his time was devoted to working for the French Coal Company he was under no contract or lease giving this company the exclusive rights to his services. In fact the plaintiff also hauled other commodities for other parties as a common carrier operating pursuant to authority granted to him by the Illinois Commerce Commission. When performing services for the French Coal Company, the plaintiff was paid monthly on the basis of total weight and miles involved. The plaintiff paid for his own fuel, maintenance, costs, parts, and upkeep expenses. It is clear from the record that he had sole control over his equipment which included the right to determine when he should purchase new trucks and as to what models.

The plaintiff performed services for the coal company for a period of 13 years and we deem it significant that payments made to him could only be considered "payments in gross" since no deductions were withheld for social security payments, unemployment compensation taxes or Federal income tax. It should be noted that on the contrary the plaintiff in filing his tax returns treated himself as a self-employed person.

The plaintiff, in support of his plea that the judgment of the trial court should not be disturbed, argues that a master-servant relationship existed between himself and the coal company. In support of this contention he cites several cases. In examining these cases we fail to find them persuasive as to supporting a finding of a master-servant relationship in the instant case. In *Hayes v. Morse* (8th Cir. 1973), 474 F.2d 1265, we have a case where independent truck owners were determined to be employees even though they owned their own equipment as does the plaintiff in the instant case; however, in *Hayes* the truck owners were tied to a carrier employer by elaborate financial arrangements, and in fact had relinquished all control as to the operation of their equipment. Also cited by the plaintiff is *Downs v. Baltimore & Ohio R.R. Co.*, 345 Ill.App. 118, 102 N.E.2d 537, wherein a master-servant relationship was found to exist. We quarrel not with the decision in *Downs*, but it is clearly not applicable to the case before us since the injured plaintiff was working for a dock company and the costs of operating this company including the payment of wages to the plaintiff was paid by the defendant railroad. The dock company though a nominal employer of the plaintiff was a mere instrumentality of the defendant, and, as the court stated in *Downs*, it was "a straw man without legal life of its own."

The plaintiff in his brief states, "Although the French Coal Company may not have *exercised* its control over the manner of his doing his work, it most certainly had the *right* to exercise such control." We agree with this statement, since it is applicable whether the plaintiff was an employee or an independent contractor. Should the plaintiff have refused to deliver coal to a new customer (an example cited by the plaintiff), then we have no doubt but what the coal company could have refused to further use the services of the plaintiff. We would not, however, construe such refusal to be synonomous with a conclusion that the plaintiff was "discharged or fired." We are of the opinion that at any time either the plaintiff or the coal company could have severed the loose albeit contractual relationship that existed between them over a period of many years.

■■ Without reiterating the facts as adduced by the evidence, we can only conclude that when an owner operator such as the plaintiff exercises such a degree of freedom in the use of his equipment, its scheduling, its

maintenance, and does not participate in benefits normally afforded employees, *i.e.*, overtime pay, income tax withholding, social security payments by the employer, then that individual must be treated as an independent contractor. See *George Transfer & Rigging Co.* (1974), 208 NLRB No. 25; *Fleet Transport Co.* (1972), 196 NLRB 436.

■■ Having reached this conclusion, it follows that the action of the trustees in denying the pension claim of the plaintiff was not arbitrary or capricious.

It should be further noted that the plaintiff had an opportunity to respond to the trustees' analysis of his employment relationship with the coal company. The plaintiff's application for benefits failed to specifically mention his work with the coal company. Even though prior to a determination by the trustees the attorney for the plaintiff was notified that further evidence of employee service would have to provided or the claim would be rejected, no such evidence was forthcoming. Neither the plaintiff or his attorney ever made any effort to ascertain what type of further evidence or further information was deemed necessary by the trustees in order to merit a favorable disposition of the plaintiff's pension application. While the plaintiff was under no duty to offer any explanation to the trustees as to why he deemed their tentative decision to deny his application as an erroneous decision, he nevertheless had an opportunity to do so, and failing to avail himself of this opportunity certainly does not lend merit to his contention that he was the recipient of arbitrary and capricious treatment.

■■ The function of the trustees is to preserve the vitality of the fund and to effectively apply its worth to the benefit of as many intended employees as is economically possible. In absence of vagarious conduct we will not disrupt that function, and we find no impropriety on the part of the trustees with respect to the situation before us. See *Gaydosh v. Lewis* (D.C. Cir. 1969), 410 F.2d 262.

For the reasons set forth, the judgment of the Circuit Court of La Salle County is reversed.

Reversed.

STOUDER and DIXON, JJ., concur.