645 F.2d 660
 2 Employee Benefits Ca 1477
 Roy C. RICHARDSON, Appellee,
v.
CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND,
Appellant.
Roy C. RICHARDSON, Appellant,
v.
CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, Appellee.
 Nos. 80-1527, 80-1581.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 10, 1981.
Decided April 13, 1981.
 
 John R. Cleary, Kansas City, Mo., for Roy C. Richardson.
 Alan M. Levy, Goldberg, Previant, Uelmen, Gratz, Miller, Levy & Brueggeman, S. C., Milwaukee, Wis., James G. Walsh, Jr., Steven A. Fehr, Jolley, Moran, Walsh, Hager & Gordon, Kansas City, Mo., for Central States, Southeast and Southwest Areas Pension Fund.
 Before HEANEY and HENLEY, Circuit Judges, and PECK,* Senior Circuit Judge.
 HEANEY, Circuit Judge.
 
 
 1
 This appeal involves an action filed in the district court under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(1)(B) (1976) (ERISA). The defendant, Central States Southeast and Southwest Areas Pension Fund (Fund) maintains and administers an employee benefit plan. The plaintiff, Richardson, originated this action in an effort to recover benefits due him from the Fund. The sole question raised on the merits was whether Richardson had completed "twenty years of service in the industry" when he retired in 1975.
 
 
 2
 The case was tried before the district court without a jury. The trial court determined that Richardson had completed the requisite twenty years of service in the industry as an employee of several trucking firms, and ordered the Fund to pay the plaintiff the sums due and owing as his normal retirement benefit. The district court denied the plaintiff's request for attorneys fees and prejudgment interest. The Fund appeals from the district court's ruling on the merits and the plaintiff appeals from the denial of attorneys fees and prejudgment interest. We affirm the order of the district court.
 
 
 3
 * The decisive issue raised below was whether Richardson was an "employee" or an "independent contractor" during the period July, 1959, through April, 1964.[1] The Fund's Committee of Trustees denied Richardson's application for benefits on the ground that between the relevant dates he was self-employed. The denial was affirmed by the Fund's Appeals Committee and again by the Full Board of Trustees (Trustees).
 
 
 4
 The district court, after a full hearing, concluded that the Trustees' denial of pension payment benefits was an abuse of its discretion. The court ruled, in substance, that the decision was not supported by any evidence and constituted an erroneous application of the applicable law under the general common law test incorporated into the Pension Plan through Article I § 7(d).[2] See Morgan v. Mullins, 643 F.2d 1320 at 1321 (8th Cir. 1981); Bueneman v. Central States, Southeast and Southwest Areas Pension Fund, 572 F.2d 1208, 1209 (8th Cir. 1978); Phillips v. Kennedy, 542 F.2d 52, 54 (8th Cir. 1976).
 
 
 5
 Between the relevant dates Richardson performed truck driving services for King Van Lines. The relationship between Richardson and King Van Lines is the sum and substance of this case. If Richardson and King Van Lines did not share a master-servant relationship, then the claimant is entitled to no benefits. If the district court was correct in determining the existence of that relationship, the Trustees' decision was properly set aside.
 
 
 6
 In Hayes v. Morse, 474 F.2d 1265 (8th Cir. 1973), we stated: "The essential characteristics of master and servant relation is the retention by the employer of the right to direct and control the manner in which the work shall be performed." Id. at 1266 (emphasis in the original). In the instant case, the Company owned all transportation rights and permits under which Richardson operated. While Richardson owned the tractor unit, it was licensed to the Company and bore the Company's colors. Richardson pulled only Company-owned or Company-authorized trailers. King Van Lines, moreover, controlled assignments, booked shipments, collected payments and maintained total authority over Richardson's work under an "exclusive contract" agreement. The Company held "nonnegotiable" title to the equipment. The Company was authorized to discipline Richardson for violation of any contract terms. While Richardson may have selected his own routes, the Company determined when he had to report to work. Furthermore, the Company had to authorize any substitute drivers and Richardson could only refuse a trip in an emergency.
 
 
 7
 There is evidence in the record that the Company classified Richardson as an "independent contractor," that Richardson reported his income for Social Security and tax purposes as derived from self-employment, that he was paid on a percentage basis as opposed to separate amounts for wages and equipment rental and that he paid for fuel, insurance and a portion of the license fee. These factors, while relevant, do not support a finding that the Company lacked sufficient control over Richardson. "(T)he test lies in the degree to which the principal may intervene to control the details of the agent's performance." Hayes v. Morse, 347 F.Supp. 1081, 1084 (E.D.Mo.1972), aff'd, 474 F.2d 1265 (8th Cir. 1973) (quoting Radio City Music Hall Corp. v. United States, 135 F.2d 715, 717 (2d Cir. 1943)). Self-serving statements concerning how an individual is characterized, unrelated and unsupported by the actual working relationship, falls well short of the mark. We reaffirm Judge Webster's incisive reasoning in Hayes v. Morse, supra:
 
 
 8
 (I)t does not follow simply because owner/operators are not considered employees for purposes of Social Security that they are not employees within the meaning of the term as used in the Pension Fund * * * and the common law. The contrary has already been demonstrated.
 
 
 9
 347 F.Supp. at 1086, aff'd, 474 F.2d 1265 (8th Cir. 1973). Cf. Northern v. McGraw-Edison Co., 542 F.2d 1336, 1343 n.7 (8th Cir. 1976), cert. denied, 429 U.S. 1097, 97 S.Ct. 1115, 51 L.Ed.2d 544 (1977); Scheuer v. Central States Pension Fund, 358 F.Supp. 1332, 1335 (E.D.Wis.1973).
 
 
 10
 The Fund asserts that Wardle v. Central States, Southeast and Southwest Areas Pension Fund, 627 F.2d 820 (7th Cir. 1980), is on all fours with the instant case and mandates affirmance of the Trustees' denial of benefits. We disagree. In Wardle, the Trustees denied benefits for essentially the same reason it did here; it reasoned that the claimant was self-employed and, therefore, not eligible for benefits under the Plan. Wardle is, however, distinguishable from the case at bar. In Wardle, the claimant was subject to no restrictions on the personal use of his truck or his solicitation of business elsewhere. In the instant case, it is clear that the Company exercised almost complete control over Richardson's job-related duties. Moreover, we agree with the district court that the case at bar is virtually identical to Hayes v. Morse, supra. We find it significant that Wardle distinguished Hayes on several relevant grounds. Wardle distinguished Hayes on the basis that, in Hayes, (1) the claimant was not allowed to work for anyone other than the Company, (2) the employer was to approve all substitute drivers and (3) the employer could be identified by the physical appearance of the truck. These three factors are present in the instant case. We agree with Judge Swygert that these factors, as well as the other stated supra, are significant and materially distinguish the instant case from Wardle.
 
 
 11
 We hold that the district court correctly determined Richardson was an employee of King Van Lines and, therefore, entitled to pension payment benefits. The Trustees' denial of benefits on the basis that Richardson was an independent contractor cannot be supported on the basis of the record before us. Since it was based upon an erroneous application of law, it was properly set aside by the court below.[3]
 
 
 12
 In so holding, we are aware of the fact that while contributions to the Fund on Richardson's behalf total less than $10,000, he could receive benefits in excess of $160,000. This potential "windfall" flows from the language in the Pension Plan which gives credit to certain persons for hours worked as employees in the trucking industry even though no contributions for those hours have been made to the Fund. This result is the fault of the Pension Plan, not that of the district court nor this Court. If the Trustees feel that a change is required to protect the integrity of the Fund, then it is their responsibility to make the change.II
 
 
 13
 We are troubled by the decision of the Trustees for another reason. Assuming, arguendo, that the letters Richardson received from the Fund announcing its various decisions constitute the decisions of the Board of Trustees and its inferior committees, these decisions are wholly conclusory. They recite neither the facts of the case nor the rationale supporting their judgment. In these respects, they are similar to other decisions of the Trustees. Our concern is that we are not only asked to defer to the judgment of the Trustees, but we are also asked to do so without the benefit of a reasoned opinion. While we have no desire to complicate the lives of the Trustees, or to require a lengthy reasoned opinion in every case, we do feel that the Trustees are obligated to briefly state the facts of the case and the rationale for their decision. In this way, the Trustees may begin to build a body of precedent that will ultimately bring about a form of consistency otherwise lacking in the administration of the Fund.
 
 
 14
 This is not the first Court to question the sufficiency of the Trustees' decisions. In Wardle v. Central States, Southeast and Southwest Areas Pension Fund, supra, Judge Swygert stated:
 
 
 15
 we note with concern the skeletal nature of the letters explaining the (Trustees') reasons for its decision. Although they informed Wardle that his application had been denied because he was self-employed while working for Purcell and Lovelace, the letters arguably did not set forth the reasoning behind the decision or the type of information necessary for him to qualify for a pension.
 
 
 16
 Id. at 627 F.2d 828 n.17.
 
 
 17
 The Trustees are under a continuing statutory mandate to:
 
 
 18
 (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
 
 
 19
 (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.
 
 
 20
 29 U.S.C. § 1133 (1976).
 
 
 21
 The relevant federal regulations that implement the statutory mandate provide:
 
 
 22
 A plan administrator * * * shall provide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant:
 
 
 23
 (1) The specific reason or reasons for the denial;
 
 
 24
 (2) Specific reference to pertinent plan provisions on which the denial is based;
 
 
 25
 (3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and
 
 
 26
 (4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.
 
 
 27
 29 C.F.R. § 2560.503-1(f) (1980).
 
 
 28
 The regulations also provide that every Plan must establish and maintain an appeal procedure for claimants who are not satisfied with the Fund's initial decision. The regulations set out a strict time frame within which the Trustees must issue their decision. Finally, the regulations mandate:
 
 
 29
 (3) The decision on review shall be in writing and shall include specific reasons for the decision, written in a manner calculated to be understood by the claimant, as well as specific references to the pertinent plan provisions on which the decision is based.
 
 
 30
 (4) The decision on review shall be furnished to the claimant within the appropriate time described in paragraph (h)(1) of this section.
 
 
 31
 29 C.F.R. § 2560.503-1(h)(3)(4) (1980).
 
 
 32
 That regulation concludes that if the Trustees fail to comply with the mandatory time limits, the claimant may treat such as a denial for purposes of exhausting his administrative remedy.
 
 
 33
 We read the statute and the regulations to require the Board of Trustees to issue a written opinion that includes specific reasons for the decision. Bald-faced conclusions do not satisfy this requirement.
 
 
 34
 In this case, the Committee of Trustees purportedly reviewed Richardson's claim on three occasions. After each such occasion, Richardson was sent a standard form letter signed by Edward J. Murtha, Administrator of the Pension Benefits Division of the Fund, that stated the Committee reviewed the application and that "(i)t was the trustees (sic) decision that credit could not be granted for the period of July, 1959, thru March, 1964, as the Committee considers this to be self-employment." Murtha simply cited Article I, § 14 of the Pension Plan as a proffered rationale; this section defines continuous service in the industry and concludes that self-employment is not included as creditable. This falls well short of the level of acceptability. Neither the Committee of Trustees nor Murtha explained why they did not consider Richardson's employment creditable. No factors of Richardson's employment with King Van Lines were mentioned as indicia of self-employment.
 
 
 35
 After the Pension Payment Appeals Committee adopted the decision of the Committee of Trustees, Richardson was sent another form letter that restated the decision of the initial committee.
 
 
 36
 After his appeal was processed, Richardson was sent still another form letter announcing the final decision of the Board of Trustees. The letter stated in relevant part:
 
 
 37
 The Full Board of Trustees has upheld the decision of the Pension Payment Appeals Committee in that you could not be granted any credits for the period of July, 1959 through March, 1964, as they consider you to be self-employed. Self-employment is defined under Article 1, Section 14 of the Pension Plan.[4]
 
 
 38
 Richardson was never notified of the rationale supporting the Trustees' final decision.
 
 
 39
 We conclude that the Trustees were obligated to set out in opinion form the rationale supporting their decision so that Richardson could adequately prepare himself for any further administrative review, as well as an appeal to the federal courts. The statute and the regulations were intended to help claimants process their claims efficiently and fairly; they were not intended to be used by the Fund as a smoke screen to shield itself from legitimate claims.
 
 
 40
 After a careful review of the entire file, counsels' briefs and oral argument, we conclude that the district court did not substitute its judgment for that of the Trustees. The court below correctly determined that the decision of the Trustees was not supportable. Moreover, we conclude the district court did not err in denying plaintiff's request for attorneys fees and prejudgment interest.
 
 
 41
 The judgment of the district court is affirmed.
 
 
 
 *
 JOHN W. PECK, U. S. Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation
 
 
 [1]
 On appeal, no question is raised concerning Richardson's service for Trans American Van Lines, Inc., from 1954 through June, 1959, nor for his service with Dealers Transit from 1966 until his retirement in 1975
 
 
 [2]
 Article VI of the Pension Plan indicates that questions of construction are to be determined in accordance with Illinois Law. Article I § 7(d) states that "(i)n all instances, the common law test, or the applicable statutory definition of master-servant relationship shall control." Since the parties have indicated no applicable statutory provision controls this question, we are guided by the common law test for determining whether a master-servant relation exists. Moreover, since Illinois applies the common law test, we need not determine whether Article VI and Article I § 7(d) are inconsistent. See Standard Acc. Ins. Co. v. Industrial Comm'n, 39 Ill.2d 172, 233 N.E.2d 543, 544-545 (1968); Village of Creve Coeur v. Industrial Comm'n, 32 Ill.2d 430, 206 N.E.2d 706, 708 (1965); Henn v. Industrial Comm'n, 3 Ill.2d 325, 121 N.E.2d 492, 494 (1954); see also Hayes v. Morse, 347 F.Supp. 1081, 1085 (E.D.Mo.1972), aff'd, 474 F.2d 1265 (8th Cir. 1973)
 
 
 [3]
 "Where the Trustees impose a standard not required by the pension plan itself, this court has stated that such action 'would result in an unwarranted and arbitrary construction of the Plan.' " Morgan v. Mullins, 643 F.2d 1320 at 1321 (8th Cir. 1981) (quoting Maness v. Williams, 513 F.2d 1264, 1267 (8th Cir. 1975))
 
 
 [4]
 Although the letter stated "self-employment" is defined in Art. I § 14 of the Plan, we find no such definition. That provision, as we stated above, defines continuous service in the industry and concludes that self-employment is not creditable