Lyle SHORT, Executor of the Estate of Melvin A. Short, Appellee,

. v.

CENTRAL STATES, SOUTHEAST & SOUTHWEST AREAS PENSION FUND, Appellant.

Harold O. ZORN, Appellee,

v.

CENTRAL STATES, SOUTHEAST & SOUTHWEST AREAS PENSION FUND, Appellant.

Harold O. ZORN, Appellee,

v.

CENTRAL STATES, etc., Appellant.

Harold O. ZORN, Appellant,

v.

CENTRAL STATES, etc., Appellee.

Nos. 83–1949, 83–2129, 83–2584 and 83–2616.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1983.

Decided March 12, 1984.

As Modified March 14, 1984.

---

Timothy G. Costello, Goldberg, Previant, Uelmen, Gratz, Miller & Brueggeman, S.C., Milwaukee, Wis., Paul A. Zoss, Myers, Knox & Hart, Des Moines, Iowa, for appellant.

Robert L. Ulstad, Ulstad Law Office, Fort Dodge, Iowa, for appellee.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BRIGHT, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

The defendant in this case, The Central States, Southeast and Southwest Areas Pension Fund (Fund), appeals from judgments, entered by district courts[1] in two separate cases, which set aside decisions of the Fund's Benefits Claim Review Committee (Committee), denying applications for pension benefits. These cases were consolidated for the purposes of appeal. We affirm in part and reverse in part.

## I. *Issue*

The main issue in both cases is whether these individual plaintiffs-appellees who both own and operate a tractor are "employees", under an employee pension benefit plan covered by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1381 (1976), (ERISA). The employment benefit plan in both cases consists of a fund which is a trust regulated by section 302 of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5) (Supp. V 1981), and is an employee pension benefit plan (Pension Plan) as those terms are used and defined by ERISA, 29 U.S.C. § 1002 (1976); 29 U.S.C. § 1002 (Supp. V 1981). The district courts had jurisdiction over these cases pursuant to section 502 of ERISA, 29 U.S.C. § 1132(e) (1976). The Taft-Hartley Act, 29 U.S.C. § 186(c)(5) (Supp. V 1981), ERISA, 29 U.S.C. § 1002(2)(A)(i) (Supp. V 1981), and the terms of the Pension Plan prohibit the payment of pension benefits to anyone except employees.

Under the terms of the Pension Plan, an applicant for benefits must have completed twenty years of continuous employment as an employee in the teamster industry, with ten or more years of contributions, in order to qualify for a twenty year service pension. "Continuous service in the industry" is defined as "accumulated years of employment ... calculated from the employee's last employment or re-employment date following the last break in service." A "break in service" occurs at the end of any sixty consecutive months, between February 1, 1955, through March 31, 1969, in which the applicant was not employed in the teamster industry. In computing an applicant's years of service, any time of employment in the teamster industry as an employer, as a member of a partnership, or as a self-employed individual is not counted in determining eligibility.

The Pension Plan provides that Illinois law shall govern issues of construction. Absent a statutory definition of the master-servant relationship, the common law is to be applied to determine whether an applicant was an employee within the meaning of the Pension Plan.

### a. *Short*

From May of 1962 through April of 1965, Short operated as an interstate, over-the-

---

1. The Honorable W.C. Stuart, Chief Judge, United States District Court for the Southern District of Iowa. The Honorable Donald E. O'Brien, United States District Court for the Northern District of Iowa.

road truck driver for Aero Mayflower Moving & Storage Co., pursuant to an equipment and service lease agreement. From May of 1965 through June of 1967, Short worked in the same capacity pursuant to a similar agreement with B & B Transfer & Storage. During this period of time, B & B leased one of its trailers, Short's tractor and Short's services to Bekins Van Lines, Inc. Under these agreements, Short rented his tractor and driving services to the companies to deliver goods hauled in their trailers. In addition, Short was to drive exclusively for these companies; either party could terminate the agreement at will with thirty days written notice; and Short operated under the authority of the ICC permits held by Mayflower and B & B/Bekins.

Short paid for the basic Iowa Motor Vehicle licenses for his tractor, but Mayflower and B & B/Bekins paid for the necessary non-Iowa licenses and permits and also all licenses for the trailers. Both companies required that Short wear a uniform while driving for them but, unlike the companies' employees, Short had to buy his uniforms. If Short needed help in loading or unloading cargo, he was responsible for hiring and paying any helpers, and was not reimbursed for these expenses. Short could substitute only drivers who had been certified by the companies.

Both companies paid Short on a "percentage of the revenue" basis, not by the hour. With the exception of brief training periods required by both companies, neither company withheld F.I.C.A., state or federal income taxes from Short's salaries. However, Mayflower did withhold the cost of worker's compensation insurance premiums from Short's salary. Between 1962 and 1967, Short filed tax returns as a self-employed individual.

Throughout his relationship with the companies, Short decided when and for how long he would work; he could take vacation days without the approval of either company simply by notifying their dispatchers that he was out of service. Mayflower and B & B/Bekins instructed Short as to when and where to pick up a load, the contents of a load, and the time and place for delivery. However, Short was free to choose the route between points of loading and delivery.

Short bore the costs of insurance on his tractor, maintenance of his tractor, and fuel. The companies bore the costs of maintaining and insuring their trailers. The companies handled the paperwork associated with billing, and also prepared the bills of lading. Customer payments were made directly to the companies or, where a delivery was C.O.D., indirectly through Short. Short was paid by B & B only after B & B had been paid by Bekins. Short's tractor bore the name of either Mayflower or Bekins throughout the period in question.

In contrast to Short, B & B/Bekins: paid their local, short-haul drivers by the hour, required approval for employees' vacation days, supplied the drivers with tractors, uniforms and trailers, maintained all equipment, contributed to worker's compensation insurance on behalf of the drivers, paid all tolls, paid for overnight lodging expenses, and prescribed the hours drivers were to work. A manager for Mayflower testified that Short was considered by Mayflower to be an independent contractor, not an employee, who was paid on a commission basis. The owner and manager of B & B testified that Short was under the supervision of B & B, as well as Bekins, from May of 1965 through June of 1967.

#### b. *Zorn*

Between 1959 and 1967, Zorn operated as an over-the-road, interstate truck driver under an equipment and service agreement with Ellsworth Freight Lines. Under the agreement, Zorn rented his tractor and driving services to deliver goods hauled in Ellsworth's trailers. Zorn was under an exclusive contract to Ellsworth, and was to furnish his services at any and all times during the term of the agreement.

Ellsworth paid Zorn according to a percentage of the total shipping charges, and Zorn received his pay regardless of whether the customers paid Ellsworth. Zorn had

to pay for maintenance on his tractor, fuel, traffic fines, fines relating to overweight restrictions, any extra help which might have been necessary for loading and unloading cargo, and all personal expenses.

Zorn operated under Ellsworth's licenses and permits, pulled only trailers supplied by Ellsworth, handled only loads arranged through Ellsworth's dispatcher, and displayed the company's name on both the tractor and trailer. Zorn was subject to discipline by Ellsworth for actions such as traffic offenses. Unlike Short, Zorn was not required to have substitute drivers approved by the company. Zorn was free to refuse to transport a load, but only when there was more than one load for him to haul. Finally, while working for Ellsworth Zorn's tax status was that of a self-employed individual; Ellsworth did not withhold F.I.C.A., state or federal income taxes from Zorn's salary.

The only issue on appeal is whether the Fund's Committee erred, as a matter of law, when it determined that Short and Zorn were ineligible for pension benefits because Short had been self-employed while working for Mayflower and B & B/Bekins, and because Zorn had been self-employed during the time he drove for Ellsworth. If Short and Zorn were employees, within the meaning of the Pension Plan and during the times in question, then they are entitled to the benefits for which they applied.

## II.  *Analysis*

### a.  *Standard of Review*

In reviewing the denial of pension benefits, under a plan covered by ERISA, the standard is whether the Trustees of the plan have acted arbitrarily, capriciously or in bad faith. In other words, a reviewing court must determine whether the Trustee's decision is supported by substantial evidence and, if so, whether they have made an erroneous decision on a question of law. *Danti v. Lewis*, 312 F.2d 345, 348

(D.C.Cir.1962); *Hayes v. Morse*, 347 F.Supp. 1081, 1086 (E.D.Mo.1972), *aff'd*, 474 F.2d 1265 (8th Cir.1973); *see Richardson v. Central States, Southeast & Southwest Areas Pension Fund*, 645 F.2d 660, 662 (8th Cir.1981).

Whether a given individual is an employee or independent contractor is a question of law, which must be decided by reviewing the particular facts in each case. Thus:

> there is no shorthand formula or magic phrase that can be applied to find an answer, but all of the incidents of the relationship must be assessed and weighed with no one factor being decisive. What is important is that the total factual context is assessed in light of the pertinent common-law agency principles.

*Wardle v. Central States, Southeast & Southwest Areas Pension Fund*, 627 F.2d 820, 825 (7th Cir.1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981), *quoting, NLRB v. United Ins. Co.*, 390 U.S. 254, 258, 88 S.Ct. 988, 990, 19 L.Ed.2d 1083 (1968). Further, the weight given to any single factor can vary depending upon the other relevant factors involved in a case. *Compare Wardle*, 627 F.2d at 826, 826–27 (where the court gave the plaintiff's tax status weight in determining status of independent contractor) *with Reiherzer v. Shannon*, 581 F.2d 1266, 1272–73 (7th Cir.1978) (where the court reversed a decision which had given the applicant's tax status too much weight, noting that the plan did not authorize the Trustees to consider an individual's tax status when determining eligibility for benefits).

Finally, in reviewing a decision of the Trustees, a federal court is not to hold a *de novo* factual hearing which would allow for the admission of new evidence. Rather, the court must focus on the evidence which was before the Trustees when the final decision was made.[2] *Wolfe v. J.C.*

**2.** There is no indication in the record before us that either of the district courts considered evidence other than that which was before the Committee when it made its original decisions, and again when it reaffirmed both denials. To the contrary, it appears that both applications were resubmitted prior to trial in order to give the Committee the chance to reconsider its deci-

*Penney Co., Inc.,* 710 F.2d 388, 394 (7th Cir.1983).

#### b. *The Common Law Test*

■ Concededly, these owner-operators operating exclusively for a single company present a hybrid situation between that of a clearly independent contractor and that of a classic employee; and thus the courts, in determining the legal effect of that relationship, must look to the basic purpose and nature of the arrangement and the various factors to weigh in the equation of the freedom of the operator versus the control, guidance and directions reserved or asserted by the lessee company.

Illinois courts have considered various factors in resolving the question of whether a particular worker is an employee or an independent contractor. These factors include: the method of payment, the right to discharge, and the skills required for the job. *Ragler Motor Sales v. Industrial Comm'n,* 93 Ill.2d 66, 66 Ill.Dec. 342, 344, 442 N.E.2d 903, 905 (1982); *Kirkwood v. Industrial Comm'n,* 84 Ill.2d 14, 48 Ill. Dec. 556, 558–59, 416 N.E.2d 1078, 1080–81 (1981); *Wallace v. Smith,* 75 Ill.App.3d 739, 31 Ill.Dec. 463, 468, 394 N.E.2d 665, 670 (1979); *Manahan v. Daily News-Tribune,* 50 Ill.App.3d 9, 8 Ill.Dec. 659, 663, 365 N.E.2d 1045, 1049 (1977). The courts also consider: the source of the materials and tools, *Ragler,* 66 Ill.Dec. at 344, 442 N.E.2d at 905; *Kirkwood,* 48 Ill.Dec. at 559, 416 N.E.2d at 1081; *Manahan,* 8 Ill.Dec. at 663, 365 N.E.2d at 1049; the work schedule, *Ragler,* 66 Ill.Dec. at 344, 442 N.E.2d at 905; *Kirkwood,* 48 Ill.Dec. at 559, 416 N.E.2d at 1081; whether the party performing the work is engaged in a business apart from the regular business of the person for whom the work was done; and whether the work done is a part of the regular business of the person for whom the work is done or is only incidental to the main business. *Manahan,* 8 Ill.Dec. at 663, 365 N.E.2d at 1049.[3] However, the Illinois courts have identified the right to control the work as the most important single factor in the determination. *Ragler,* 66 Ill.Dec. at 344, 442 N.E.2d at 905; *Globe Cab Co. v. Industrial Comm'n,* 86 Ill.2d 354, 55 Ill.Dec. 928, 932, 427 N.E.2d 48, 52 (Ill.1981); *Kirkwood,* 48 Ill.Dec. at 559, 416 N.E.2d at 1081; *Wallace,* 31 Ill.Dec. at 468, 394 N.E.2d at 670; *Manahan,* 8 Ill.Dec. at 663, 365 N.E.2d at 1049.

The precedent in this circuit is consistent with the Illinois cases noted above. *Hayes v. Morse,* 347 F.Supp. 1081, 1084 (E.D.Mo. 1972), *aff'd,* 474 F.2d 1265 (8th Cir.1973) and *Richardson v. Central States, Southeast & Southwest Areas Pension Fund,* 645 F.2d 660, 663 (8th Cir.1981). These

---

sions in light of the evidence uncovered during discovery.

**3.** We note that the common law test as applied in Illinois courts, to determine the nature of an employment relationship, is similar to the reformulation of the common law test which appears in the *Restatement (Second) of Agency* § 220 (1957):

(1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.

(2) In determining whether one acting for another is a servant or an independent contractor, *the following matters of fact, among others, are considered:*

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) *whether or not the one employed is* engaged in a distinct occupation or business;

(c) the kind of occupation, with reference *to whether, in the locality, the work is usually done under the direction of the employer or* by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

cases dealt with factual situations similar to those in the cases before us. In *Hayes*, the district court held that owner/operators who: were required to follow routes assigned by their employer, and to sign in at checkpoints along the routes; were subject to call for work by their employer; could refuse a load only if ICC requirements were violated; were instructed by their employer as to all points and times of pick-up and delivery; were required to explain delays to their employer; were required to have substitute drivers approved by their employer; were subject to discharge for cause and; were bound by contract to drive exclusively for their employer, were employees within the meaning of the pension plan. An additional factor considered by the court was that the relationship between the drivers and the company did not begin and end with particular loads, but was ongoing. Further, the court held that the drivers were employees despite the fact that the drivers had declared themselves as independent contractors for tax purposes. *Hayes*, 347 F.Supp. at 1084, 1085, 1086. This court affirmed the decision in *Hayes*. 474 F.2d 1265 (8th Cir.1973).

In *Richardson*, this court held that an owner/operator was an "employee" for purposes of a pension plan where: the company owned all transportation rights and permits under which the driver operated; the driver's tractor, although personally owned, was licensed to the company and bore the company's colors; the company controlled assignments, booked shipments, collected payments and maintained total authority over the driver's work under an exclusive contract; the company determined when the driver was to report to work; the company could discipline the driver for violating contract terms; the company retained the right to approve of and substitute drivers; and the driver could only refuse a load in the case of emergency. *Richardson*, 645 F.2d at 662. This was so in spite of the facts that the company had classified the driver as an independent contractor, the driver had declared the status of an independent contractor for tax and social security pur-

poses, the driver was paid on a percentage of the revenue basis, and the driver paid for fuel, insurance on the truck, and a portion of the license fee. *Id.* at 662–63.

### c. *Discussion*

■ We admit that the question of whether drivers who are owners as well as operators of their tractors are employees, is one which falls within a grey area, and one which cannot be answered quickly or easily. As can be gleaned from the caselaw and the situations presented in the cases at bar, employment of owner/operators can involve characteristics of "employee" status as well as "independent contractor" status. However, based on our review of the relevant precedent, we find that Short and Zorn were employees for purposes of the Pension Plan as a matter of law. Thus, the actions taken by the district courts, which set aside the decisions of the Trustees on the basis that they were erroneous as a matter of law, were proper.

Characteristics which weigh in favor of a finding of employee status are as follows:

both parties operated under exclusive contracts with the companies they drove for;

both drivers worked for the same companies for a number of years;

both drivers operated under the licenses and permits held by the companies;

both drivers pulled only trailers belonging to their respective companies;

both drivers displayed the logo or colors of the companies they were driving for, on their tractors as well as on the trailers;

both drivers received their pay directly from the companies they drove for, and not from individual customers; and

both parties were subject to discharge.

In Short's case there are additional factors which favor the finding of employee status. Short was required to wear uniforms for the companies he drove for even though, unlike other employees, he had to buy the uniforms; he could substitute only drivers who had been certified by the companies; and he was paid by B & B only after B & B

was paid by Bekins. To Zorn's case must be added the additional factor of the limited circumstances under which he could refuse a load.

The factors weighing against a finding of employee status are as follows:

both drivers were responsible for hiring and paying extra help when it was needed;

both drivers were paid on a percentage of the revenue basis;

with the exception of brief training periods in Short's case, none of the companies involved withheld state or federal taxes from the driver's salaries;

both drivers had declared themselves as independent contractors for tax purposes; and

both drivers paid for maintenance, insurance, and fuel for their tractors, as well as fines, and personal expenses.

To Zorn's case must be added the facts that he could substitute drivers without company approval and he received his pay regardless of whether the customer paid Ellsworth. To Short's case must be added the facts that he had considerable freedom to decide when and how long he would work, and he could take vacation days without company approval.

When all of the relevant factors are viewed together, and weighed with and against each other, the scales are tipped in favor of finding that the plaintiffs were employees within the meaning of the Pension Plan. We recognize that the factual situations presented in these cases are somewhat different than, and not quite as black and white as, the factual situations presented in *Hayes* and *Richardson*. However, the differences are not sufficient to tip the scales in the opposite direction and alter our conclusion. When the "total factual context is assessed in light of the pertinent common-law agency principles," *Wardle*, 627 F.2d at 825, it is clear that the companies were the parties who ultimately retained the right of control in these cases.

Contrary to the assertion made by the Fund, the conclusion that Short and Zorn were employees does not conflict with the Seventh Circuit's decision in *Wardle*. The owner/operator in *Wardle* was not under an exclusive lease with any company, nor did his tractor bear the logo of any company. Rather, the driver used the tractor to advertise his own business. *Wardle*, 627 F.2d at 826. *See id.* at 827 n. 15 (where the court partially relies on these same factors to distinguish *Wardle* from the drivers in *Hayes*).

We also recognize the decision of the Illinois Appellate Court in *Munts v. Fitzsimmons*, 25 Ill.App.3d 109, 323 N.E.2d 153 (1975). *Munts* is apparently the only Illinois case which presents a factual situation comparable to the cases under consideration. *Id.* at 154. The Illinois court held that Munts was an independent contractor and not entitled to employee pension benefits. *Id.* at 155. However, there is a significant distinction between the *Munts* case and the cases at bar: Munts was not under an exclusive contract with any company and, in fact, drove for more than one company during the same period of time. *Id.* at 154. Short and Zorn both operated under exclusive contracts and each drove for their respective employers for several years. This distinction between the cases is crucial when the factor of exclusive employment is weighed with the other factors indicating employee status and against the factors indicating independent contractor status.

e. *The Procedural Issue*

For purposes of clarification, we deal with the peripheral procedural issue presented by these cases. According to the district court's findings, after the initial consideration and denial of Zorn's request for benefits, Zorn simply received a letter reciting the conclusion that he was ineligible for benefits because he was not in employee status during the years he worked for Ellsworth. However, on January 26, 1983, the Benefits Claim Review Committee reconsidered Zorn's application and, in so doing, took into account a letter which had been drawn up by counsel for the Fund and which set out in detail the reasons supporting the denial of the appli-

cation. The Committee adopted this statement of reasons and affirmed their earlier denial. It is unclear from the record whether this statement was ever given to Zorn.

Short's case presents a somewhat different situation. According to the district court's findings of fact, Short initially received a letter denying his application from the Fund's group director. This letter contained no more than the conclusion that Short was ineligible for benefits because he was not in employee status during the years in which he drove for B & B/Bekins and Mayflower.

After discovery for trial was completed, Short's application was resubmitted to the Committee. The Committee reaffirmed its decision and, by letter, notified counsel for the Fund of the decision. This letter to counsel did not elaborate on the reasons for the denial. The Fund's attorney then drew up a letter delineating the reasons for the denial and mailed it to Short's attorney. However, the record contained no evidence that the reasons articulated by the Fund's attorney were considered by the Committee. To the contrary, the first mention of these considerations was in the letter from the Fund's attorney to Short's attorney.

■ In *Richardson*, 645 F.2d at 664, we set forth the regulations which detail the requirements under ERISA, 29 U.S.C. § 1133 (1976), for notices denying benefits [4] and we need not reproduce them here. However, we reiterate that we read ERISA and its regulations "to require the Board of Trustees to issue a written opinion that includes *specific reasons* for the decision. Baldfaced conclusions do not satisfy this requirement." *Id.* at 665.

In Zorn's case the district court held that the initial denial failed to meet the *Richardson* requirements, but that the Committee had attempted to remedy the situation by adopting the letter which articulated the reasons for the decision. The court held that the remedial action satisfied the *Richardson* requirements.

■ In Short's case, on the other hand, the district court found that:

The record contains only the conclusory finding of nonemployee status, evidenced by an unsigned form … and [the group director's] letter … along with [counsel's] *post hoc* attempt to supply a basis and rationale for the committee's decision to reaffirm its original decision. If [counsel's] letter were that of the committee, rather than that of the Fund's attorney, it might be deemed a good faith attempt to satisfy the procedural requirements unequivacally [sic] announced in *Richardson*. Unfortunately, that is not the case.

Thus, the court held that the Committee had failed to meet the *Richardson* requirements. Given these circumstances, we wholeheartedly agree. A *post hoc* attempt to furnish a rationale for a denial of pension benefits in order to avoid reversal on appeal, and thus meaningful review, diminishes the integrity of the Fund and its administrators. ERISA and its accompanying regulations "were intended to help claimants process their claims efficiently and fairly; they were not intended to be used by the Fund as a smoke screen to shield itself from legitimate claims." *Richardson*, 645 F.2d at 665. We fully expect that all applications which are denied will be framed according to the procedural requirements announced in *Richardson*, and that all applications will be reviewed in accordance with the substantive principles established in *Hayes, Richardson,* and the cases decided today.

### f. *Attorneys fees and prejudgment interest*

■ In Short's case, the district court awarded prejudgment interest and denied the request for attorney fees. The Fund appealed from the grant of prejudgment interest. Short did not cross-appeal from the denial of attorney fees, but attempts to raise that issue in his appeal. Because Short failed to preserve the issue for ap-

---

**4.** 29 C.F.R. § 2560.503–1(f)(h)(3)(4) (1980).

peal, it is not properly before us and we do not consider whether it may have been an abuse of discretion to deny him attorney fees. *Stella v. DePaul Community Health Center, Inc.*, 642 F.2d 258, 261 (8th Cir.1981). However, we affirm the award of prejudgment interest.

In Zorn's case, the district court awarded attorney fees but denied the request for prejudgment interest. The fund appealed the decision to grant attorney fees and Zorn appealed the failure to award prejudgment interest. We affirm this award of attorney fees, but reverse the district court's denial of prejudgment interest.

■ Under ERISA, the award of attorney fees is discretionary. 29 U.S.C. § 1132(g) (1976). Thus, we can reverse a decision regarding attorney fees only upon an abuse of discretion, which we will not find unless the record clearly supports such a conclusion. *Bowman v. Pulaski County Special Sch. Dist.*, 723 F.2d 640 at 646 (8th Cir.1983). We find no evidence of abuse in the district court's award of attorney fees to Zorn. Thus, the award is affirmed.

■ However, we cannot reach the same conclusion regarding the denial of prejudgment interest to Zorn. Zorn was an employee within the meaning of the Pension Plan and thus was entitled to pension benefits upon the processing of his application. Essentially, the Fund has retained money which rightfully belongs to Zorn. To allow the Fund to retain the interest it earned on funds wrongfully withheld would be to approve of unjust enrichment. Further, the relief granted would fall short of making Zorn whole because he has been denied the use of money which was his. *See Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1219 (8th Cir.), *cert. denied*, 454 U.S. 1084, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981); *Hodgson v. American Can Co.*, 440 F.2d 916, 922 (8th Cir.1971). "Both at law and equity, interest is allowed on money due ...." *Hodgson*, 440 F.2d at 922. Thus, the district court erred in its denial of prejudgment interest, as a matter of law.

Accordingly, we affirm the Short decision in its entirety, affirm the award of attorney's fees in Zorn's case, award prejudgment interest to Zorn, and remand to the district court for a determination of the interest due on Zorn's claim.