**Albert H. RUMPKE, Plaintiff,**

v.

**The RUMPKE CONTAINER SERVICE, INC., and Affiliates of Defined Benefit Pension Plan, Defendant.**

**No. C–1–00–524.**

United States District Court, S.D. Ohio, Western Division.

July 30, 2002.

Paul Henry Tobias, Tobias & Kraus–1, David Donald Kammer, Tobias, Krauss & Torchia, Cincinnati, OH, for Plaintiff.

Louis Francis Gilligan, Keating Muething & Klekamp–1, Cincinnati, OH, for Defendants.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Plaintiff's Motion for Judgment on the Merits (doc. 31), *See Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 619 (6th Cir.1998); Defendant's Response In Opposition and Cross Motion for Judicial Determination Affirming the Decision of the Plan Committee (doc. 33) and Plaintiff's Reply (doc. 36).

Plaintiff, Albert Rumpke, Jr., filed a Complaint on June 28, 2000, alleging violation of Title 29 U.S.C. § 1132(b)(1)(a) entitled the Employee Retirement Income Security Act (hereinafter "ERISA")(doc. 1). Basically Plaintiff claims that he has been an employee of Defendant and thus is entitled to ERISA benefits, whereas Defendant claims that Plaintiff has been an independent contractor. Defendant filed an Answer on August ·28, 2000 (doc. 4). Plaintiff moved for class certification on January 16, 2001 (doc. 8) to which Defendants filed a Memorandum in Opposition February 20, 2001 (doc. 9). The Court denied Plaintiff's Motion for class certification September 6, 2001 (doc. 27) based on Plaintiff's failure to meet the prerequisites of Fed.R.Civ.P. 23(a).

Plaintiff filed the instant Motion on April 1, 2002 (doc. 31). Defendant filed its Response on May 1, 2002 (doc. 33); and Plaintiff filed its Reply on May 31, 2002 (doc. 36).

In order to properly analyze the issue before the Court, a review of the relevant factual issues of this case is required. The following facts have been derived from the various pleadings, motions, and the administrative record in this case.

The Rumpke Company (hereinafter, "Rumpke") is a family business that began operations in 1932 (doc. 31). The purpose of this business is waste disposal. The structure of this business entity is at the heart of this litigation. The customers of Rumpke are serviced by thirty-five route supervisors. These route supervisors are given a commission by Rumpke based on gross revenues and are responsible for all business conducted within an assigned geographic area (doc. 31). Approximately eight hundred drivers operate under the supervision of these route supervisors and are responsible for the actual waste collection within each assigned geographic re-

gion. Defendant contends that the route supervisors are independent contractors and that the drivers are employees of these route supervisors (doc. 33). Plaintiff contends that these route supervisors as well as their drivers are common law employees of Defendant and as such are entitled to participation in Defendant's pension plan created pursuant to the provisions of ERISA (doc. 31). Defendant denies this contention and asserts that since these route supervisors are independent contractors, Defendant is under no obligation to allow either the route supervisors or their employees to participate in its ERISA Plan (doc. 33).

Plaintiff worked as a route supervisor for Defendant from 1972 until 1989 (doc. 1). In this capacity, Plaintiff supervised a crew that operated trash collection trucks, as did all such route supervisors (*Id.*). Plaintiff contends that he also operated such trucks on his own (*Id.*). Defendant owned and maintained all the trucks that the route supervisors and their drivers operated (*Id.*). Defendant also paid for all the gas used and provided insurance for all of the trucks either used or supervised by the route supervisors (*Id.*). In his Complaint, Plaintiff asserts that Defendant kept all of the company's books and was responsible for billing Rumpke customers.

There is no evidence of any written contracts between Defendant and the route supervisors (doc. 33). Furthermore, Defendant contends that a number of the route supervisors have incorporated business entities to administer their routes and have established their own ERISA plans, 401(k) plans, and health plans for their employees (doc. 33). The route supervisors are also responsible for hiring and firing the employees who work their routes (*Id.*). These employees are paid from the commissions that the route supervisors receive (*Id.*).

Plaintiff contends that Defendant wrongfully misclassified Plaintiff as an independent contractor instead of an employee (doc. 31). According to Plaintiff, even though he was classified as independent contractor, he met the requirements for consideration as a common law employee, and as such, was entitled to participate in Defendant's ERISA pension plan (*Id.*).

## STANDARD OF REVIEW

 The Court must first consider the appropriate standard of review to apply in this case and the corresponding deference which is due to the Plan Administrator's determination that Plaintiff was an independent contractor during the period in question. Plaintiff contends that the appropriate standard of review in this case is *de novo* (doc. 31). Defendant disputes this assertion and contends that since the Plan in this case affords the Committee complete discretion over interpretation and administration of the Plan, an arbitrary and capricious standard should apply (doc. 33)(*citing Leahy v. Trans Jones, Inc.,* 996 F.2d 136, 139–40 (6th Cir.1993)); *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 984 (6th Cir.1991). Defendant is correct in its assertion that the Plan in this case gives the Committee the discretion over interpretation and administration of this Plan (doc. 33). Plaintiff makes two arguments, however, which convince this Court that *de novo* review is nonetheless appropriate. First, the question of whether a person is an employee or an independent contractor is a question of law. *Berger Transfer & Storage v. Central States,* 85 F.3d 1374, 1377 (8th Cir.1996)("The standard of review has been well expressed as follows: The existence and degree of each fact is a question of fact while the legal determinations to be drawn from those facts—whether workers are employees or independent contractors—is a question of law."). Courts give no discretion to

administrators for legal determinations. *Penn v. Howe–Baker Eng'rs Inc.*, 898 F.2d 1096 (5th Cir.1990). Second, there is evidence that there is a conflict of interest as the owners of this business were also the Plan administrators who made the determinations in this case. In conflict of interest cases, review is *de novo*. *Kotrosits v. GATX Corp.*, 970 F.2d 1165 (3d Cir.1992). Therefore, the Court has concluded that a *de novo* review is appropriate in this case. At a very minimum, *de novo* review is appropriate as to the legal determination as to whether Plaintiff was indeed an employee or independent contractor.

■ The determination of whether a particular individual is a common law employee is a factual determination made by looking at over thirteen factors. *Nationwide Mutual Ins. v. Darden*, 503 U.S. 318, 323–24, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992). There the Supreme Court stated:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and the means by which the product is accomplished. Among the other factors relevant to this inquiry are the skills required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* at 323–24, 112 S.Ct. 1344. Plaintiff argues that a number of factors dictate a determination by this Court that Plaintiff was a common law employee.

The Court will now analyze these factors in turn. The Supreme Court has traditionally looked for guidance in its analysis to the Restatement of Agency. *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 752 n. 31, 109 S.Ct. 2166, 104 L.Ed.2d 811. This Court will do the same.

## ANALYSIS

### Skills Required and the Source of Instrumentalities and Tools

■ Work that does not require extensive education or skill is a factor indicating the relation of employer-employee. Restatement (Second) of Agency § 220(2)(h). As a route supervisor, Plaintiff's duties were driving trucks, picking up and dumping garbage, and supervising a work crew of drivers that picked up garbage from residential and commercial customers (doc. 31). Plaintiff argues that these tasks were all relatively low skilled (*Id.*). Defendant provided or required training for new drivers, which demonstrated company control and a lack of independence of skills by route supervisors and drivers. Defendant offered no evidence demonstrating that Plaintiff's job required skills demonstrating an independent trade or profession nor prior training or experience. The Court concludes that this factor weighs in favor of classifying Plaintiff as an employee.

The fact that a hiring party furnishes significant tools, materials, and other equipment tends to show the existence of an employer-employee relationship. Restatement (Second) of Agency § 220(2)(k). Defendant supplied the trucks, fuel, maintenance, safety equipment, waste containers, and office supplies for the route supervisors (doc. 31). There was no capital investment required by Plaintiff, and Defendant told Plaintiff that he could not purchase his own trucks, but that the company would provide them (*Id.*). The

trucks were all labeled with the name of the Rumpke Company (*Id.*). The Court finds that this factor likewise weighs in favor of classifying Plaintiff as an employee.

### Location of Work

Control over an employee is indicated when work is performed on the premises of the hiring party or when the worker can be compelled to travel a designated route, to canvass a territory within a certain time, or to work at specific places as required. Restatement (Second) of Agency § 220(2)(h). In this case, part of Plaintiff's workday was on the company-owned landfill and part of the day was in the main office (doc. 31). Up until 1984, Plaintiff was required to report into the main office everyday; after that time he was required to report in twice weekly but call in daily (*Id.*). Plaintiff was assigned a mailbox in Defendant's office that would contain notes, new starts, cancellations, missed stops, and the like (*Id.*). Often Plaintiff was required to see Bill Rumpke, the head of the company, who would tell Plaintiff, for example, to go back and pick up garbage from a missed stop (*Id.*). The company told Plaintiff on which days he should collect from customers (*Id.*).

The Court finds that Defendant exercised significant control over the direction, scheduling, and timing of off-premises activities. This fact, combined with the requirement that Plaintiff report regularly to the company and spend a part of his day at the Rumpke landfill, indicates that Plaintiff was an employee.

### Duration of the Relationship

A continuing relationship between a worker and the hiring party indicates that an employer-employee relationship exists. Restatement (Second) § 220(2)(j). There is no question that Plaintiff steadily served Defendant as a route supervisor for about sixteen years (doc. 36). This indicates that Plaintiff was an employee.

The nature of the relationship is further demonstrated to be one of employment when the hiring party maintains a right to discharge the worker, and the worker maintains the right to terminate the relationship without incurring liability. *See* Rev. Rul. 87–41, 1987–1 C.B. 296, 298–99 (examining the common law rules for determining employment status). An independent contractor, by contrast, cannot be fired so long as he produces a result that meets contract specifications, and cannot terminate the relationship without risking breach of contract. *See id.*

During the years of Defendant's relationship with Plaintiff, Defendant reserved the right to discharge Plaintiff at any time, and threatened termination of Plaintiff upon occasion (doc. 31). Plaintiff was also told that he could leave at any time (*Id.*). The Court therefore finds that Plaintiff's relationship with Defendant was one of a long-term, at-will employee, as opposed to an ad hoc, per project, definite duration contractor.

### The Hiring Party's Right to Assign Additional Projects and the Extent of Hiring Party's Discretion Over When and How Long to Work

The right of a hiring party to assign additional projects to a worker is another indicator of control over the worker demonstrating the worker is an employee. *See* Rev. Rul. 87–41, 1987–1 C.B. 296; *Dumas v. Gommerman*, 865 F.2d 1093, 1105 (9th Cir.1989). Defendant assigned additional projects to Plaintiff: collecting second bills, advertising, inspecting trucks, training, and administering tests (doc. 36). These additional assignments indicate an employment relationship.

The establishment of set hours of work by the hiring party is another indicator of control. *See* Rev. Rul. 87–41, 1987–1 C.B. 296. Defendant set the days when trash pickups would take place (doc. 31). Defen-

dant spoke with Plaintiff about his employees arriving too late at the landfill (*Id.*). Defendant gave Plaintiff minimum starting times and earliest reporting times (*Id.*). These facts indicate Defendant's control over Plaintiff as an employee.

### The Method of Payment

Payment on a straight commission or by the job generally indicates that a worker is an independent contractor. Payment by the hour, week, or month generally points to an employer-employee relationship. *See* Rev. Rul. 87–41, 1987–1 C.B. 296; *Short v. Central States, Southeast & Southwest Areas Pension Fund,* 729 F.2d 567, 574 (8th Cir.1984).

Plaintiff asserts that though he was paid by commission, a number of factors in his case militate against the determination that he was an independent contractor. First, he says that Defendant's control of the instrumentalities and tools, and refusal to yield such control to Plaintiff, resulted in a reduced commission (doc. 31). Plaintiff argues that if he were truly an independent contractor he could have provided such instrumentalities himself and increased his commission (*Id.*). Second, Plaintiff argues that Defendant had such control over his route, that it could, and did increase or decrease the route size at will, which directly increased or decreased Plaintiff's compensation (*Id.*).

Plaintiff's arguments concerning compensation are well-taken. Defendant exercised enough flexible control over Plaintiff's payment to cast doubt upon the label of such payment as pure commission. Defendant ultimately reserved control over Plaintiff's payment. The Court therefore concludes that this factor also indicates an employer-employee relationship.

### The Hired Party's Role in Hiring and Paying Assistants

When a worker hires, supervises, and pays assistants pursuant to a contract under which worker is responsible for the attainment of a result, this factor indicates independent contractor status. *See* Rev. Rul. 87–41, 1987–1 C.B. 296. When the party who hires a worker supervises and pays the worker's assistants, this factor shows control over all the workers on the job and indicates that the worker is an employee.

Though route supervisors hired, paid, and fired assistant drivers, Defendant retained a high degree of control over those drivers. Defendant set forth in writing and maintained a hiring system over which Plaintiff had no control (doc. 31). Defendant dictated wage levels for new hires and retained the right to discipline and terminate Plaintiff's drivers (*Id.*). The company even reinstated a driver under Plaintiff whom Plaintiff had purportedly terminated (*Id.*). The Court finds that the company's role in hiring and paying Plaintiff's assistants demonstrates that Plaintiff and drivers were employees of Defendant.

### Whether the Work is Part of the Regular Business of the Hiring Party

■ The integration of the worker's services into the business operations of the hiring party generally shows that the worker is subject to direction and control. When the success or continuation of a business depends to an appreciable degree upon the performance of certain services, the workers who perform those services must necessarily be subject to a certain amount of control by the owner of the business. *See United States v. Silk,* 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947). The collection, hauling, and disposal of garbage is part of the regular business of Defendant. Plaintiff's job was highly integrated into the business operations of the company. As such, Defendant's control over Plaintiff indicates an employment relationship.

## The Provision of Employee Benefits

The providing of employee benefits is an indication of an employment relationship. *See, e.g.,* Restatement (Second) § 220(2)(j). Benefits are evidence of longer-term employment and are a form of compensation that is not tied to a commission or the completion of a particular project.

Plaintiff was a participant in Defendant's health care plan (doc. 31). Other route supervisors were also members of the plan as were many drivers *(Id.).* Defendant states that Plaintiff was a "member" of the plan who was required to pay the company the premium cost to obtain coverage and not a "covered employee" to whom coverage was provided at no cost as an employee benefit (doc. 33). Defendant states that it was an error to have provided access to the health insurance plan to its workers classified as subcontractors, and that it has discontinued the practice *(Id.).* Plaintiff, in contrast, produced a card issued to him indicating that he was a "covered employee" (doc. 31). Plaintiff states that the health plan by its terms was only open to employees (doc. 36).

A hiring party would generally not provide access to a health care plan to an independent contractor. Thus the Court concludes that Plaintiff's access to a health care plan is evidence of an employment relationship.

## The Tax Treatment of the Hired Party

█ The tax treatment of the worker can also shed light upon the nature of the relationship between the hiring party and the worker. *See, e.g., Short,* 729 F.2d 567, 574. Despite the company's treatment of Plaintiff as an independent contractor, the Court finds persuasive Plaintiff's arguments that upon specific request to the IRS by filing a form SS-8, it was determined in 1992 that Plaintiff was an employee (doc. 31). The IRS found that Plaintiff was an employee of Defendant because, among other reasons, the truck and equipment were supplied by Defendant; Plaintiff operated under Defendant's name; Defendant reserved the right to discharge Plaintiff at any time without incurring liability; Defendant had right to control and direct Plaintiff's work; and Plaintiff's services were performed under Defendant's instruction and training *(Id.).*

The Court finds the 1992 determination of the IRS to be persuasive. Such determination indicates that Defendant's classification of Plaintiff as an independent contractor was in error.

## Right to Control Manner and Means

█ The final *Darden* consideration is overarching and is informed by all of the preceding factors. When the factors taken together indicate that the hiring party possesses control over the manner and means by which the product is accomplished, then the worker is classified as an employee. When the worker operates autonomously to produce the product, the worker is an independent contractor.

In this case, Defendant "owned" the customer routes, not Plaintiff. Defendant owned the trucks and equipment by which the product of waste disposal was physically accomplished. Defendant controlled the management of the route supervisors' routes by reserving the right to change routes, set days and times of services, providing written work instructions, disciplining drivers, and by impeding Plaintiff from operating an outside business. Defendant's control over the manner and means of its waste disposal business shows that the route supervisors within its company were employees.

█ The common law test to determine whether an individual qualifies as an "employee" provides no "shorthand formula or magic phrase that can be applied to find the answer,... all of the incidents of the relationship must be assessed and

weighed with no one factor being decisive." *Darden*, 503 U.S. at 324, 112 S.Ct. 1344, *citing NLRB v. United Insurance Co. of America*, 390 U.S. 254, 258, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968). It is of no consequence that Plaintiff was designated "independent contractor" when his relationship with Defendant was that of an employee. *See* Rev. Rul. 87–41, 1987–1 C.B. 296. The Court concludes after its *de novo* review of the administrative record in light of the *Darden* factors that Plaintiff was an employee.

## CONCLUSION

Therefore, having reviewed the administrative record, the Court hereby GRANTS Plaintiff's Motion for Judgment on the Merits (doc. 31) and DENIES Defendant's Cross Motion for Judicial Determination Affirming the Decision of the Plan Committee (doc. 33).

SO ORDERED.