Yolanda Y. NICHOLS, Plaintiff,

v.

**ALL POINTS TRANSPORT COR-
PORATION OF MICHIGAN,
INC., Defendant.**

No. 04–CV–72232–DT.

United States District Court,
E.D. Michigan,
Southern Division.

March 18, 2005.

William A. Roy, Roy, Shecter, Bloomfield Hills, MI, for Plaintiffs.

Janice G. Hildenbrand, Collins, Eihorn, Southfield, MI, for Defendants.

## ORDER DISMISSING PLAINTIFF'S FEDERAL QUESTION CLAIM (COUNT I) FOR LACK OF SUBJECT MATTER JURISDICTION AND REMANDING PLAINTIFF'S STATE LAW CLAIM (COUNT II)

CLELAND, District Judge.

This is an employment discrimination case where Plaintiff Yolanda Nichols brought a civil action against her former employer, Defendant All Points Transportation Corporation of Michigan, Inc. ("All Points"). Plaintiff alleges violations of the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* and asserts a claim for race discrimination under Michigan's Elliot Larson Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2201 *et seq.* This matter is currently before the court on Defendant's January 31, 2005 "Motion for Summary Judgment." Defendant's motion has been fully briefed and the court finds that

a hearing is not required. *See* E.D. Mich. LR 7.1(e)(2). For the reasons set forth below, the court will grant Defendant's motion.

## I. BACKGROUND

Plaintiff, an African American female, was hired by All Points on August 30, 1999 as a Dispatch Assistant. Plaintiff was the only African American out of the eleven individuals working in the All Points office when she was hired. All Points is an intermodal shipping company engaged in transportation of freight, a considerable amount of which relates to rail cargo. During Plaintiff's employ, Jerry Roach served as All Point's Operations Manager and Plaintiff's immediate supervisor. It is undisputed that All Points employed eleven non-driver employees during the years 2002 and 2003; however the parties dispute the total number of drivers engaged by All Points during these calendar years. Plaintiff argues that there were 57 driver/employees employed by All Points. Defendant maintains that its drivers are independent contractors (not employees) and that it did not ever employ more than 50 employees and drivers in any given week during the two calendar years in question.

All Points ended Plaintiff's employment when Mr. Roach fired her on September 12, 2003. According to Defendant, "Plaintiff was terminated for poor attitude at work, lack of cooperation, failure to accept responsibility, yelling at a customer, absenteeism, tardiness, smoking in an unauthorized area and improper use of sick days." (Def.'s Mot. Br. at 3.) Plaintiff maintains that these asserted reasons are a mere pretext for Defendant's discrimination.

Plaintiff filed her two-count complaint in this case in Wayne County Circuit Court on May 20, 2004. Defendant subsequently removed the case to this court pursuant to 28 U.S.C. § 1441, based on federal question jurisdiction.

In her ELCRA race discrimination count, Plaintiff claims that during her employment she was subjected to racial slurs, innuendo and comments by fellow employees and supervisors. (Pl.'s Resp. at p. xvi.) For instance, Defendant acknowledges that one time dispatcher Gina Toffelmeyer remarked, in front of Plaintiff, that one of the drivers had a "nigger truck," but claims that Roach immediately stepped in and corrected Toffelmeyer. (*Id.;* Roach Dep. at 34–35.) Defendant denies various other alleged discriminatory statements. Plaintiff claims that her September 12, 2003 discharge from employment was improperly based on her race.

With regard to her FMLA count, Plaintiff's daughter suffers from sickle cell anemia. She also alleges that this same "serious health condition" also afflicted her parents. (Pl.'s Compl. at ¶ 37.) Plaintiff claims that she missed time to care for her daughter and parents and that the Defendant interfered with her FMLA rights. She also argues that Defendant interfered with her FMLA rights by counting FMLA-qualified absences from work against her in making its decision to end her employment. *See* 29 U.S.C. § 2615(a)(1) & (a)(2).

Defendant moves for summary judgment arguing: (1) that Plaintiff's FMLA claims fail because All Points is not an employer as defined by the federal statute and because Plaintiff failed to request qualified FMLA leave; and (2) that Plaintiff has failed to present evidence sufficient to create a genuine material issue of fact as to her claims of race discrimination in violation of ELCRA.

## II. STANDARD

Summary judgment is proper when there is no genuine issue as to any materi-

al fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once a party has moved for summary judgment and has met its burden of production, the non-moving party must present significant probative evidence establishing a genuine issue of material fact in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548.

Summary judgment is not appropriate when such probative evidence "presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id.* at 252, 106 S.Ct. 2505 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.' "). A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from the admissible evidence presented in a manner most favorable to the nonmoving party. *Wexler v. White's Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir.2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). The court does not weigh the evidence presented to determine the truth of the matter, but determines if the evidence creates a genuine issue for trial. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir.2003).

## III. DISCUSSION

### A. FMLA Coverage: The Definition of "Employer" Under 29 U.S.C. § 2611

Defendant argues that it is not a covered "employer" as that term is defined by the FMLA. Plaintiff's private cause of action filed under the FMLA is viable only if All Points meets the statutory definition of "employer" under 29 U.S.C. § 2611(4). As the Sixth Circuit has explained:

> [T]he FMLA entitles "eligible employees" to take up to twelve weeks of unpaid leave in any twelve-month period for qualifying medical or family reasons. *See* 29 U.S.C. § 2612(a)(1). The statute ensures that the employee will be restored to the same or an equivalent position upon returning to work. *See* 29 U.S.C. § 2614(a)(1). The statute [also] creates a private right of action entitling "eligible employees" to seek both equitable relief and money damages "against any *employer* (including a public agency) in any Federal or State court of competent jurisdiction," 29 U.S.C. § 2617(a)(2), should that *employer* "interfere with, restrain, or deny the exercise of" FMLA rights, 29 U.S.C. § 2615(a)(1).

*Mitchell v. Chapman*, 343 F.3d 811, 826 (6th Cir.2003).

The FMLA defines "employer" as follows:

> The term "employer"—
>
> (i) means any person engaged in commerce or in any industry or activity affecting commerce *who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or proceeding calendar year;*
>
> (ii) includes—
>
>> (I) any person who acts, directly or indirectly, in the interest of an employer to any employees of such employer; and
>>
>> (II) any successor in interest of the employer;
>
> (iii) includes any "public agency", as defined in section 203(x) of this title; and
>
> (iv) includes the General Accounting Office and the Library of Congress.

29 U.S.C. § 2611(4)(A) (emphasis added).

Under the regulations promulgated by the Department of Labor, courts apply the "payroll method" in assessing whether an entity "employs 50 or more employees for each working day during each of 20 or more calendar workweeks." *Walters v. Metro. Educ. Enters., Inc.,* 519 U.S. 202, 207, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997) ("This test is generally called the 'payroll method,' since the employment relationship is most readily demonstrated by the individual's appearance on the employer's payroll."); *see also Brown v. Cranford Transportation Serv., Inc.,* 244 F.Supp.2d 1314, 1317–18 (N.D.Ga.2002). "A private employer is covered if it maintained 50 or more employees on the payroll during 20 or more calendar workweeks (not necessarily consecutive workweeks) in either the current or the preceding calendar year." 29 C.F.R. § 825.105(e). The Department of Labor regulations also explain that "[a]ny employee whose name appears on the employer's payroll will be considered employed each working day of the calendar week, and must be counted whether or not any compensation is received for the week." 29 C.F.R. § 825.105(b). "Part time employees are also considered to be employed each day of the calendar week, provided that they are maintained on the employer's payroll. However, [i]f there is not an employer/employee relationship ... such individual is not counted." *Id.* at § 825.105(c).

■ Defendant's argument that it does not meet the statutory definition of "employer" under the FMLA presents a fundamental threshold issue regarding the court's subject matter jurisdiction in this case. Plaintiff's complaint includes two counts, an ELCRA race discrimination count and an FMLA count. Defendant removed this case on the basis of federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Federal question jurisdiction predicated on the FMLA, however, does not exist where an employer does not employ a sufficient number of employees to come within the ambit of FMLA's definition of "employer." *Douglas v. E.G. Baldwin Assocs., Inc.,* 150 F.3d 604, 605 (6th Cir.1998) ("For a federal court to exercise subject matter jurisdiction in a statutory scheme such as the FMLA, the defendant-company must meet the statutory definition of 'employer.'"); *see also Grimsley v. Fiesta Salons, Inc.,* 2003 WL 117985, at *4 (E.D.Mich. Jan.7, 2003).

In *Douglas,* the Sixth Circuit ruled that the district court lacked subject matter jurisdiction over the plaintiff's case after it concluded the defendant/employer did not meet the FMLA's definition of "employer" under 29 U.S.C. § 2611(4). *Id.* Like the instant case, the *Douglas* case began after the defendant employer removed a case filed in state court, asserting federal question jurisdiction based on the alleged violations of the FMLA. *Id.* at 607. The dis-

trict court ruled that the defendant did not meet the statutory definition of "employer" and that, therefore the FMLA did not apply. Nevertheless, the district court retained jurisdiction and held that the defendant/employer had adopted all of the FMLA's provisions in an employment contract with its employees. *Id.* The Sixth Circuit held that the lower court lacked subject matter jurisdiction to rule on this state law breach of contract claim that incorporated the FMLA's provisions. As the *Douglas* court explained:

> [T]he District Court retained jurisdiction over the case even after determining that Defendant Baldwin did not employ 50 or more employees, such that it could be considered an "employer" within the purview of the Act. The jurisdictional issue presented by these circumstances is whether a federal court has subject matter jurisdiction *ab initio* where a company does not meet the statutory definition of "employer" because it does not employ the requisite number of employees, even though the employer may have adopted the policies of the Act and the parties do not contest jurisdiction. We hold that it does not. While the existence of this jurisdictional prerequisite may not be immediately apparent from the text of the statute itself, an examination of relevant case law reveals that courts have consistently held that where a company does not employ the requisite statutory number of employees to be considered an "employer" under the relevant act, federal subject matter jurisdiction does not exist. *See Armbruster v. Quinn,* 711 F.2d 1332, 1335 (6th Cir.1983); *See, also, Rogers v. Sugar Tree Products, Inc.,* 7 F.3d 577, 579 (7th Cir.1993) (for federal subject matter jurisdiction to exist under the ADEA, the defendant must meet the definition of employer as set forth in the statute); *Womble v. Bhangu,* 864 F.2d 1212, 1213 (5th Cir.1989) (court remand-

ed case for determination of whether company met statutory definition of "employer" under Title VII, because if it did not the court lacked subject matter jurisdiction) . . . .

This proposition was addressed most recently by our Court in *Mickler v. Nimishillen and Tuscarawas Railway Co.,* 13 F.3d 184 (6th Cir.1993), in which we were faced with the question of whether federal question jurisdiction existed when a company did not meet the statutory definition of "employer" under the Federal Employers' Liability Act. The Court stated: "This Court has no jurisdiction over plaintiff's estoppel claim. The sole basis for federal jurisdiction in this case is FMLA. Because defendant is not a common carrier and FELA does not apply, there is no federal question." *Mickler,* 13 F.3d at 189.

*Id.* at 607–08 (citations and footnotes omitted).

■ Although Defendant presents its challenge to the FMLA's coverage in a Rule 56 motion, the challenge is, as a matter of law, one to the court's subject matter jurisdiction. As courts of limited jurisdiction, federal courts may exercise only those powers authorized by the Constitution and federal statute. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the part asserting jurisdiction." *Id.* "The first and fundamental question presented by every case brought to the federal courts is whether it has jurisdiction to hear a case, even where the parties concede or do not raise or address the issue." *Douglas,* 150 F.3d at 606–07.

Ordinarily, challenges to the court's subject matter jurisdiction take the form of a motion to dismiss under Federal Rule of

Civil Procedure 12(b)(1). Challenges to subject matter jurisdiction come in two basic flavors: (1) facial attacks; and (2) factual attacks. *See, e.g., United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994).

Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. A *facial* attack is a challenge to the sufficiency of the pleading itself. On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party. *See Scheuer v. Rhodes,* 416 U.S. 232, 235–37, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974). A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations, *see Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990), and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. But the fact that the court takes evidence for the purpose of deciding the jurisdictional issue does not mean that factual findings are therefore binding in future proceedings. *See id.*

*Id.; see also Brown,* 244 F.Supp.2d at 1317 (court weighed evidence in a factual attack finding that the plaintiff failed to meet her burden to prove facts triggering federal court's subject matter jurisdiction under FMLA's definition of "employer").

Whether examined under Rule 56 or under Rule 12(b)(1), Plaintiff has the burden of presenting evidence sufficient to show that Defendant is a covered "employer" as that term is defined by Congress in the FMLA.[1] Plaintiff has failed to present sufficient evidence to show that All Points is a covered "employer" under 29 U.S.C. § 2611(4). All Points does not dispute that it is a "person engaged in commerce or in any industry or activity affecting commerce," but claims that it did not employ "50 or more employees for each working day during each of 20 or more calendar workweeks" in the relevant calendar years of 2002 and 2003. In support of its argument, Defendant offers the affidavit of its Accounting Supervisor/ Office Manager, Evelyn Ondrovick. (Def.'s Mot. Br. Ex. B.) In her affidavit, Ondrovick states that All Points employed 11 traditional employees during the relevant calendar years. However, she states that "[i]n 2002 and 2003 the highest number of drivers paid in any week was 33 (see attached driver 2002/2003 pay spreadsheet)." (Ondrovick Aff. at ¶ 8.) Attached to the affidavit is a listing of each week for the years 2002 and 2003. The document also identifies the total pay and number of drivers paid for each corresponding workweek. The highest number of drivers listed for any of the workweeks in 2002 or 2003 is 33. (*See id.*) As such, Defendant argues that even if its drivers were not independent contractors, the highest total number of drivers *and* employees hired during any given workweek in the two calendar years at issue never exceeded 44. The highest number for any of these weeks fell below the required 50 or more employees per week for at least twenty weeks as required by the statute. *See* 29 U.S.C. § 2611(4). In short, Defendant claims that, even if its drivers were "employees" for purposes of the FMLA, Plaintiff has not, and cannot, show that 50 or more drivers and employees worked at least 20 weeks in either calendar year 2002 or 2003.

---

1. The mere fact that Defendant removed this case based on 28 U.S.C. § 1331 does not foreclose the court from considering whether subject jurisdiction exists. *See Douglas v. E.G. Baldwin & Assocs.,* 150 F.3d 604 (6th Cir.1998).

In support of her position that All Points is a covered "employer" under the Act, Plaintiff relies on Defendant's response to a document production request. Plaintiff has identified no other evidence to contradict Defendant's assertion that it never paid more than 33 drivers per workweek during the relevant period.

Plaintiff served on Defendant a document request seeking "[a] listing of all persons working as drivers for Defendant during the period of January 1, 2003 to the date of plaintiff's termination [September 12, 2003]." (Pl.'s Resp. Ex. 2 at 2.) In response, Defendant provided a response that stated "See Exhibit E, List of Active Drivers 1/1/03—9/12/03." (*Id.*) The attached list of "active drivers" from January 1, 2003 until September 12, 2003 included a total of 57 names.

Plaintiff argues that the court should not consider Ondrovick's January 28, 2005 affidavit because it contradicts Defendant's earlier discovery response, i.e. the list of total active drivers. *See Donohoe v. Consol. Operating & Prod. Corp.*, 982 F.2d 1130, 1136 n. 4 (7th Cir.1992); *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir.1996) ("We have long followed the rule that parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions."); (Pl.'s Resp. at 6.)

The Sixth Circuit employs a similar rule with regard to later-filed contradictory affidavits. *See, e.g., Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) ("A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony."); *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 549 (6th Cir.2000) (a party is bound by admissions in their pleadings and "cannot create a factual issue by subsequently filing a conflicting affidavit"). The

later-filed affidavit, however, must *contradict* the earlier testimony or admission. *See Rodgers v. Monumental Life Ins. Co.*, 289 F.3d 442, 450 (6th Cir.2002) (pathologist's summary judgment affidavit did not conflict with pathologist's initial affidavit, so as to warrant disregarding the second affidavit).

Here, Ondrovick's affidavit is not inconsistent with Defendant's response to the request to produce. Plaintiff asked for a list of all persons working as drivers for the period starting January 1, 2003 and ending September 12, 2003. Defendant responded by providing a list of active drivers who worked at any time during this period. The response did not detail how many drivers worked in each workweek. Ondrovick's response clarifies the number of drivers paid during each workweek and does not contradict the earlier response indicating that a total of 57 different drivers were paid at some point during the approximately nine-month period at issue. Plaintiff presents no evidence that would permit the court to conclude that more than 33 drivers were employed in any given workweek within either of the two calendar years at issue. The evidence presented reveals that the maximum number of individuals working as drivers and/or employees for Defendant in any week during 2002 or 2003 was 44, less than the statutory required number of 50 (for at least twenty weeks in one of the two calendar years). Accordingly, the court lacks a sufficient basis to find that All Points was an "employer" under the FMLA and lacks subject matter jurisdiction.

Defendant also argues that its drivers are not "employees" for purposes of the FMLA, but rather independent contractors. As such, Defendant argues that it does not constitute an "employer" under the FMLA, something required for jurisdiction. *See Douglas*, 150 F.3d at 608.

"As a general rule, the federal employment discrimination statutes protect employees, but not independent contractors." *Shah v. Deaconess Hosp.*, 355 F.3d 496, 499 (6th Cir.2004) (citing *Johnson v. City of Saline*, 151 F.3d 564, 567–69 (6th Cir.1998)). The parties dispute the standard the court should apply in determining whether the drivers hired by All Points are employees or independent contractors. Defendant claims that the Sixth Circuit applies the "economic realities" test when examining this issue under the FMLA, *see Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984), while Plaintiff claims that the Sixth Circuit has recently clarified that it applies the common law agency test to determine whether a hired party is an employee or independent contractor. *Shah*, 355 F.3d at 499. In *Shah*, the plaintiff filed suit in federal district court asserting claims under the Age Discrimination in Employment Act (ADEA), Title VII, and Ohio state law. *Id.* at 498. In determining whether the plaintiff was an employee who qualified for statutory relief, the Sixth Circuit noted:

> [W]e apply the common law agency test to determine whether a hired party is an independent contractor or an employee. *Johnson*, 151 F.3d at 568 (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992)). *Cf. Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 123 S.Ct. 1673, 1677–81, 155 L.Ed.2d 615 (2003). It is true that some of our cases have applied an "economic realities" test, which looks to the totality of the circumstances involved in a work relationship, including "whether the putative employee is economically dependent upon the principal or is instead in business for himself." *Lilley v. BTM Corp.*, 958 F.2d 746, 750 (6th Cir.1992); *see also Armbruster v. Quinn*, 711 F.2d 1332, 1340 (6th Cir.1983). But, in more recent cases, we have made it clear that

we prefer the common law agency analysis. The substantive differences between the two tests are minimal. *Johnson*, 151 F.3d at 568; *Simpson*, 100 F.3d at 442–43.

*Id.*

The "common law" agency analysis requires the court to consider the following factors: (1) the hiring party's right to control the manner and means by which the product is accomplished; (2) the skill required by the hired party; (3) the duration of the relationship between the parties; (4) the hiring party's right to assign additional projects; (5) the hired party's discretion over when and how to work; (6) the method of payment; (7) the hired party's role in hiring and paying assistants; (8) whether the work is part of the hiring party's regular business; (9) the hired party's employee benefits; and (10) the tax treatment of the hired party's compensation. *Id.* (citing *Simpson v. Ernst & Young*, 100 F.3d 436, 443 (6th Cir.1996)); *see also Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) (applying common law agency analysis under ERISA and noting that "[i]n the past, when Congress has used the term 'employee' without defining it, we have concluded that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine."). "Since the common-law test contains 'no shorthand formula or magic phrase that can be applied to find the answer, ... all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.'" *Darden*, 503 U.S. at 323–24, 112 S.Ct. 1344 (quoting *NLRB v. United Ins. Co. of America*, 390 U.S. 254, 258, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968)).

Defendant, on the other hand, would have the court apply the "economic realities" test. Under this test, a court con-

siders six factors to gauge whether an employment relationship exists: (1) the permanency of the relationship; (2) the degree of skill required for the particular job; (3) the worker's capital investment; (4) the opportunity for profit or loss; (5) the employer's right to control; and (6) whether the worker was an integral part of the employer's business. *Brandel*, 736 F.2d at 1117–20; *see also Imars v. Contractors Mfg. Servs., Inc.*, 165 F.3d 27, 1998 WL 598778, at *3 (6th Cir. Aug.24, 1998) (applying "economic realities" test in Fair Labor Standards Act ("FLSA") case); *Bonnetts v. Arctic Express Inc.*, 7 F.Supp.2d 977, 981 (S.D.Ohio 1998) (applying "economic realities" test in FMLA dispute).

▮▮▮ Although the *Shah* court clarified that the Sixth Circuit applies the common law agency analysis under most federal employment statutes including the ADEA and Title VII, the FMLA incorporates, by reference, the definition of "employee" found in the FLSA. *See* 29 U.S.C. § 2611(3). The FLSA, in turn, defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e). The FLSA also defines "employ" as "to suffer or permit to work." 29 U.S.C. § 203(g). The FLSA's definition of employee is broader than the common law definitions used by other statutory schemes, such as Title VII or the ADEA. *See Darden*, 503 U.S. at 326, 112 S.Ct. 1344; *Imars*, 1998 WL 598778 at *2; *Bonnetts*, 7 F.Supp.2d at 981; *see also* 29 C.F.R. § 825.105(a) ("The courts have made it clear that the employment relationship under the FLSA is broader than the traditional common law concept of master and servant."). In *Darden*, the Court highlighted the differences between ERISA's definition of employee

and that of the FLSA (which the FMLA incorporates).

The definition of "employee" in the FLSA evidently derives from the child labor statutes, see *Rutherford Food [v. McComb]*, *supra*, [331 U.S. 722] at 728, 67 S.Ct. [1473], at 1475, [91 L.Ed. 1772 (1947)] and, on its face, goes beyond its ERISA counterpart. While the FLSA, like ERISA, defines an "employee" to include "any individual employed by an employer,"it defines the verb "employ" expansively to mean "suffer or permit to work." 52 Stat. 1060, § 3, codified at 29 U.S.C. §§ 203(e), (g). This latter definition, whose striking breadth we have previously noted, *Rutherford Food*, *supra*, at 728, 67 S.Ct., at 1475, stretches the meaning of "employee" to cover some parties who might not qualify as such under a strict application of traditional agency law principles. ERISA lacks any such provision, however, and the textual asymmetry between the two statutes precludes reliance on FLSA cases when construing ERISA's concept of "employee."

*Darden*, 503 U.S. at 326, 112 S.Ct. 1344. Because the statutory definition of FMLA, unlike the definition found in ERISA, incorporates the FLSA's broader definition of "employee" and "employ," the court will continue to apply the "economic realities" test as described by the Sixth Circuit in *Donovan v. Brandel*, 736 F.2d 1114 (6th Cir.1984). *See Bonnetts*, 7 F.Supp.2d at 981; *accord Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991); *Frankel v. Bally, Inc.*, 987 F.2d 86, 90 (2d Cir.1993) ("*Darden* specifically excepted the FLSA from the application of the agency test based on this statute's expansive definition of the term 'employ' to mean 'suffer or permit to work.'").[2]

---

**2.** The court's conclusion would not change, even if the common law agency test did apply. In fact, "[t]he substantive difference between the two tests are minimal." *Shah*, 355 F.3d at 499 (citing *Johnson*, 151 F.3d at 568; *Simpson*, 100 F.3d at 442–43).

Whether the drivers for All Points are independent contractors or employees sufficient to count toward the required number of employees under the statutory definition of "employer" under the FMLA is a question of law. *See Fegley v. Higgins,* 19 F.3d 1126, 1132 (6th Cir.1994).[3]

*The Permanency of the Relationship*

Although not dispositive, the court looks to the express terms of the contract between All Points and its drivers. *See Bonnetts,* 7 F.Supp.2d at 981; *Imars,* 1998 WL 598778 at *4. Here, All Points drivers enter into a lease agreement with All Points where the driver/lessor either owns the leased equipment (i.e. the truck) or has "the legal right and authority" to lease this equipment. (Def.'s Mot. Br. Ex. C at ¶ 3.) The contract expressly provides that "[t]he lessor [driver] shall be an independent contractor only and shall not be an employee of the Company for any purpose whatsoever. The Lessor shall have absolute discretion with respect to the manner and method of performing hauling services under this Agreement, subject only to the Lessor's duty to perform these services in accordance with Lessee's contracts, the bills of lading entered into by Lessee and its shippers, applicable ICC and DOT regulations, and good industry practice." (*Id.* at ¶ 14.) By its terms, the agreement

between drivers and Defendant lasts for a period of one year but continues on a year-to-year basis unless terminated by either party through written notice. (*Id.* at ¶ 17.) In addition, Roach, All Points's General Manager, testified that the drivers have discretion to refuse a load assigned by the company's dispatcher. (Roach Dep. at 16–17.)

The express terms of the contract between the driver/lessors and All Points as lessee make the agreement terminable at any time by either party and do not suggest a permanent relationship. *See Johnson v. City of Saline,* 151 F.3d 564, 568–69 ("[T]he contractual relationship reads unmistakably as one with an independent contractor as opposed to one with an employee."). On balance, this factor favors a finding that the drivers were independent contractors. *See Brandel,* 736 F.2d at 1117 (the relationship between pickle pickers and growers was a temporary one favoring independent contractor status); *Bonnetts,* 7 F.Supp.2d at 981 (relationship between parties "was not one of a permanent nature, and therefore, indicative of an independent contractor relationship.").

*The Degree of Skill Required*

The degree of specialized skills or knowledge is also relevant in determining

---

**3.** There is an important distinction between challenging the plaintiff's status as an "employee" under the FMLA when it is undisputed that the defendant is an "employer" covered by the Act and challenging whether a defendant has the requisite number of employees to meet the definition of "employer." The former situation does not present a jurisdiction issue because the coverage of the statute is not in play. Such an issue is amenable to resolution under Rule 56. *See Lilley v. BTM Corp.,* 958 F.2d 746, 750 n. 1 (6th Cir. 1992) ("The determination of employment status is a mixed question of law and fact. Normally, a judge will be able to make this determination as a matter of law. However, where there is a genuine issue of fact, as here,

the question is to be resolved by the finder of fact in accordance with the appropriate rules of law."). On the other hand, the factual issues underlying a determination of whether a defendant is an "employer" triggering coverage of the statute is a jurisdictional issue to be resolved by the court. *See Douglas,* 150 F.3d at 608; *see also Ritchie,* 15 F.3d at 598 (court resolves issues of fact in factual challenge to jurisdiction); *Holliday v. Vacationland Federal Credit Union,* No. 03–7493, 2004 WL 903902, at *2 (N.D.Ohio Aug.22, 2003) (district court resolved whether an employee was independent contractor or statutory employee on factual challenge to subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1)).

whether a hired party is an employee or independent contractor. "The lack of required skills or knowledge is considered indicia of an employer-employee relationship." *Bonnetts,* 7 F.Supp.2d at 981 (citing *Dole v. Snell,* 875 F.2d 802, 811 (10th Cir.1989)); *see also .Rumpke v. Rumpke Container Serv., Inc.,* 240 F.Supp.2d 768, 772 (S.D.Ohio 2002) ("Work that does not require extensive education or skill is a factor indicating the relation of employer-employee."). Plaintiff argues that the drivers merely "transport containers which are loaded onto their trucks for them, and the job thus requires no skills other than driving a truck from one point to another." (Pl.'s Resp. at 5.) The court disagrees.

The *Bonnetts* court described the skill necessary in this industry as follows:

> It is undisputed that driving a truck containing large loads of cargo requires a significant degree of skill. The job requires the skill of handling a large vehicle, detailed knowledge of the national roadways, and a high level of stamina to be able to make long trips without fatigue.

*Bonnetts,* 7 F.Supp.2d at 981–82; *see also Chrisner v. Complete Auto Transit, Inc.,* 645 F.2d 1251, 1262 –1263 (6th Cir.1981) (noting that a "company's goal of transporting its freight in a safe and efficient manner is significantly served by hiring experienced truck operators" and that "[a]n individual who possesses experience in driving large, unwieldy vehicles is obviously a more rational choice for the job than is a person who does not have demonstrated ability to drive such vehicles"). The drivers also have authority and discretion to hire other drivers and helpers as they deem necessary. The drivers must also ensure that they comply with Michi-

gan law, including making sure that all drivers of commercial freight obtain the appropriate commercial drivers license.[4]

The drivers hired by All Points are not just responsible for driving. The agreement requires them to own or have legal authority to lease the trucks at issue. As such, they are often owners or managers for other entities that own the leased trucks. The driver/lessor must also maintain his equipment in good mechanical condition, is responsible for all repairs and maintenance, and must ensure compliance with all of the rules and regulations issued by the Interstate Commerce Commission and the Department of Transportation. (Def.'s Mot. Br. Ex. C. at ¶ 3.) Although All Points agrees to maintain public liability and property damage insurance, the drivers must pay all expenses associated with operating the equipment, including fuel, taxes, empty mileage, permits, tolls, and licenses. (*Id.* at ¶¶ 9, 10.) Taking on these additional responsibilities demonstrates that the drivers must exercise entrepreneurial skills often associated with small business owners. The drivers must manage their operating costs and expenses and navigate the regulatory landscape associated with hauling freight. The court finds that the degree of skill required for these drivers favors finding that they are independent contractors.

### Capital Investment

This factor also weighs in favor of finding that the drivers for All Points are independent contractors. It is undisputed that the drivers must own the equipment leased or have the legal authority to lease it to All Points under the parties' contracts. As such, the drivers or the driver's entity are responsible for the capital in-

---

**4.** The Motor Carrier Safety Act, Michigan Compiled Laws § 480.11 *et seq.,* requires all drivers of commercial vehicles to obtain a CDL. Mich. Comp. Laws § 480.12d(1). To be qualified to obtain a CDL, an applicant must meet all of the requirements of 49 CFR part 391, the federal motor carrier safety regulations. Mich. Comp. Laws 480.12d(2).

vestment in the trucks. The drivers are responsible for their own expenses including "all expenses of operation of said equipment which includes taxes, tolls, ferries and permits." (Def.'s Mot. Br. Ex. C at ¶ 10.) *See Bonnetts,* 7 F.Supp.2d at 982 ("Significant expenditures are indicative of the operation of an independent business enterprise.") (citing *Sec'y of Labor v. Lauritzen,* 835 F.2d 1529, 1537 (7th Cir.1987)). This is not a case where the hired party uses the equipment or tools of the hiring party, as often is the case in an employee-employer relationship. The driver's capital investment favors their status as independent contractors.

### Opportunity for Profit or Loss

All Points pays its drivers with checks and it does not withhold taxes. Defendant also provides its drivers a Form 1099–M for income tax reporting purposes.[5] (Ondrovick Aff. at ¶ 5.) Plaintiff does not dispute that a driver's contract provides a schedule of minimum compensation based on mileage or that drivers were typically paid a percentage of the rate received by All Points from its customers. (*See* Def.'s Mot. Ex. C and Roach Dep. at 36.) The dispatcher for All Points assigns loads for each driver and assigns a track number for each load with a corresponding payment amount. (Roach Dep. at 16.) Further, its is also undisputed that the drivers manage their own operating costs, thus giving them control of their ability to earn a profit or loss. The record evidence shows that the drivers have investment and management responsibilities typical of an independent contractor.

### Employer's Right to Control

Under the contracts, the drivers warrant that their drivers and or assistants will provide a safe and efficient service for All Points "in transportation from and to or between such points as Lessee shall designate within such reasonable periods of time-in-transit as Lessee shall specify, shall report any delay or interruption promptly to Lessee and shall comply with all instructions, rules and regulations of Lessee." (Def.'s Mot. Br. Ex. C at ¶ 12.) However, the agreements give the drivers "absolute discretion with respect to the manner and method o[f] performing hauling services under [the] Agreement[s]." (*Id.* at ¶ 14.) Defendant also maintains that its drivers are not employees and are free to refuse a load assigned to them. Drivers must also maintain their own logs. (Roach Dep. at 18.)

In arguing that the drivers are employees, Plaintiff relies on evidence that tends to show that All Points has control over the loads assigned. Under the at-will agreements, All Points maintains exclusive "possession, control and use over" the leased equipment and drivers are not permitted to haul for other companies while their contract remains in effect. (Def.'s Mot. Br. Ex. C at ¶ 5; Roach Dep. at 15; Primm Dep. at 8–9.) The trucks must also displace placards or signs displaying the name of All Points. (Def.'s Mot. Br. Ex. C at ¶ 6; Roach Dep. at 16; Primm Dep. at 9.) This exclusive nature of the business relationship is not, however, determinative. Although drivers agree to lease their equipment to serve All Points and therefore accept the loads which All Points serves, they are free to end their exclusive deal at any time.

Plaintiff also notes that the drivers are not involved in loading or unloading the

---

5. "Forms 1099 report are properly issued to independent contractors, reporting payments made to them by the company engaging their services. Forms 1099 are the approximate analog to Forms W–2 which report the wage income of employees." *W & S Distrib., Inc. v. United States,* No. 95–10158, 1996 WL 636119, at *1 (E.D.Mich. July 22, 1996); *see also Gazda v. Pioneer Chlor Alkali Co.,* 10 F.Supp.2d 656, 675 n. 44 (S.D.Tex.1997).

freight. (*See* Roach at 8–9.) Whether the drivers are involved in loading or unloading carries little weight in determining if they were employees or independent contractors.

Plaintiff next maintains that drivers are required to check in with All Points's dispatch hourly, (Pl.'s Dep. at 169–71), and that dispatcher Jason Primm's testimony contradicts Defendant's assertion that drivers may refuse loads assigned. In her deposition, Plaintiff was asked if the drivers had to maintain contact with All Points while they were on the road. She replied: "They're supposed to keep in with the dispatcher, I think, every hour." (*Id.* at 171.) This testimony loses its significance when the court considers that Plaintiff never held the position of dispatcher and when other testimony shows does not support the assertion that drivers had to check in hourly. For instance, Roach was asked whether the drivers were required to check in with the dispatcher on a regular basis. He responded: "Not on a regular basis. In other words, to make a living, the trucks will have to check in to make sure what's next and what's going on. Otherwise, they wouldn't make any money." (Roach Dep. at 17.)

In his deposition dispatcher Primm was asked, "Now, the drivers can't refuse a load if you dispatch them, can they?" He answered: "No. But we try to—you know, by keeping them happy it keeps us happy. They're not afraid to speak up and say they don't want to do this or don't want to go there or they can't do this. You know, if their truck's down or they have something to do, we usually work around those things." (Primm Dep. at 9.) The court agrees with Defendant, that Primm's explanation suggests that drivers could refuse loads and that they were not afraid to speak up and tell the dispatcher that they did not want a load. Roach also testified that he did not recall ever terminating a

relationship with a driver for refusing a load. (Roach Dep. at 16.) The exclusive nature of their contractual relationship provides strong economic incentives for the drivers to take the loads, but Primm's testimony is not sufficient to establish that the drivers had to take the loads as if they were employees of All Points. Plaintiff also cites the affidavit of Martin Montgomery in her response, but has failed to present this affidavit to the court.

The exclusive control over the manner in which the drivers haul the freight suggests that they are independent contractors. The exclusive nature of their agreement with All Points and the use of All Points placards cuts slightly in favor of an employee-employer relationship.

 Defendant does not dispute that the drivers constitute an integral part of its business. On balance, however, the six factors demonstrate that the drivers are independent contractors.

In summary, the contractual agreement specifically provides that the drivers are independent contractors. They have discretion in how they manage and maintain their equipment that is leased to Defendant. They have managerial control over their expenses which gives them a stake in controlling whether they profit from hauling for All Points. They may terminate their agreement at any time and may also refuse loads. They are not kept on All Points's payroll. All Points does not withhold employee taxes and issues Forms 1099 to the drivers. The drivers own their own trucks or have legal authority to lease the capital equipment to Defendant. Drivers pay their own operating expenses and there is no evidence that they receive employee benefits. The drivers are not employees under the FMLA.

Consequently, Plaintiff cannot establish that Defendant All Points falls within the definition of "employer" set forth at 29

U.S.C. § 2611(4). The court lacks jurisdiction over Count I of Plaintiff's complaint.

### B. Plaintiff's ELCRA Race Discrimination Claim

Because the court has determined that no federal subject matter jurisdiction exists on Plaintiff's FMLA claim, *see Douglas v. E.G. Baldwin & Assocs.*, 150 F.3d 604 (6th Cir.1998) (district court erred in exercising jurisdiction after concluding that defendant did not meet FMLA's definition of "employer"), the court lacks jurisdiction to hear Plaintiff's state law ELCRA claim. Defendant's removal was based on the FMLA claim and there is no independent basis for this court's subject matter jurisdiction over the remaining state law claim. Nor is there a basis to exercise supplemental jurisdiction under 28 U.S.C. § 1367. The remaining state law ELCRA claim will be remanded to state court.[6]

## IV. CONCLUSION

Because Plaintiff has failed to present evidence sufficient to establish that Defendant maintained 50 or more employees as required by 29 U.S.C. § 2611(4) Plaintiff's FMLA claim fails for lack of jurisdiction. Accordingly,

IT IS ORDERED that this case is REMANDED to Wayne Count Circuit Court for resolution of Plaintiff's state law claim filed under Michigan's ELCRA.

---

6. The court notes that even if supplemental jurisdiction did exist, it would nevertheless decline to exercise such jurisdiction because state law claims predominate and Plaintiff initially chose a state law forum. *See* 28 U.S.C. § 1367(c).